**In the Matter of CALLAHAN MOTORS, INC., a corporation of the State of New Jersey, Debtor.**

**No. B 233–73.**

United States District Court, D. New Jersey.

· Bankruptcy Division.

June 18, 1975.

---

Markowitz & Zindler, Trenton, N. J., for debtor.

Joel H. Sterns, Sterns & Greenberg, Trenton, N. J., receiver in bankruptcy.

Kleinberg, Moroney, Masterson & Schachter by Robert Molnar, Newark, N. J., for Receiver.

Smith, Stratton, Wise & Heher by Garrett M. Heher, Princeton, N. J., for Princeton Bank and Trust Co. Frank Petrino on the brief.

## OPINION

CLARKSON S. FISHER, District Judge.

This is a petition for review by the Princeton Bank and Trust Company (hereinafter Bank) of a bankruptcy proceeding in which its application to reclaim automobiles and sale proceeds from the bankrupt debtor was denied.

On February 23, 1973, the debtor in this action, Callahan Motors, Inc., (hereinafter Callahan), filed a Chapter XI Petition in bankruptcy. An Order was entered appointing Joel H. Sterns, Esquire, as Receiver. Callahan was engaged in the business of selling automobiles to retail customers and had, prior to the filing of the Chapter XI Petition, financed its purchases of automobiles for resale with the petitioner Bank by use of trust receipts. Pursuant to the agreement between the Bank and Callahan, the Bank would pay the wholesaler the cost of these vehicles and Callahan would then execute a promissory note and trust receipt security agreement covering the cost of these vehicles. When each vehicle was sold, Callahan was obligated to repay the Bank the amount loaned by the Bank for the cost of the purchase of the vehicle, with interest at 7½% per year.

Although the debtor was required by the terms of the trust receipt security agreement to keep the sale proceeds of each vehicle separate with payment to the Bank to be made immediately on the amount due on each vehicle, it was discovered upon a check of the debtor's inventory subsequent to the filing of the Chapter XI Petition, that 29 vehicles had been sold "out of trust" by Callahan without reimbursement to the Bank, resulting in a delinquency of $83,896.31 for the vehicles sold "out of trust."

Further, the Bank filed a Notice of Motion to reclaim the 73 vehicles purchased by the debtor with funds advanced by the Bank which were still in the debtor's inventory, amounting to $112,853.25. Therefore, the Bank's total claim against the debtor for monies loaned on the trust receipts financing agreements amounted to $196,749.56.

The Bankruptcy Judge, on April 24, 1973, approved a Consent Order directing the receiver to hold the proceeds from the sale of any such vehicle in escrow, or the vehicles themselves, pending final disposition by this Court of the issues raised in the Bank's Petition for Review of the Bankruptcy Court's decision with respect to its Motion to Reclaim.

The motion is based on the following:

On March 5, 1965, the Bank filed a financing statement with the Secretary of State perfecting its security interest in Callahan's inventory of new and used cars and the proceeds of the sale on other disposition of said inventory. On December 29, 1967, the Bank filed a continuation statement along with the appropriate filing fee and was given a copy of the statement stamped "filed" by the Office of the Secretary of State. The Bank was never informed that the continuation statement would "be deemed

ineffective by the Office of the Secretary of State and no record [would be] made thereof," nor that the Secretary of State would destroy the Bank's financing statement one year after its expiration date even though it had accepted the continuation statement for filing and had not rejected it as being premature. (Affidavit of Helen McGary, Supervisor of UCC Section of Department of State, March 28, 1973). The original financing statement was, in fact, destroyed along with the continuation statement as the Secretary of State determined that the latter did not result in expanding the term of the original financing statement beyond the five-year period which expired in March of 1970.

Yet on January 1, 1968, only a few days after the Bank's continuation statement was filed, the Secretary of State's Office adopted a policy of returning unfiled to secured parties any documents which were deemed to be presented for filing prematurely with a rejection form appropriately marked.

On May 2, 1973, the Bankruptcy Judge entered on Order denying the Bank's application to reclaim the automobiles and the proceeds of the sale based on the Court's determination that the continuation statement filed in late 1967 had no validity and did not extend the period of the original financial statement from 1970 to 1975 so as to render the continuation statement effective as of the filing of the Chapter XI Petition in 1973.

The Bank then filed a Petition for Review which cited two reasons for reversing the order denying reclamation:

1. The Bank's claim was secured prior to the rights of the Receiver because of the filing of the continuation statement by the petitioner with the Secretary of State of New Jersey on December 29, 1967, which extended the effective date of the filing of the original financial statement from March, 1970 to March, 1975.

2. Even if the above is not found to be so, the unperfected security interest of the Bank is prior to any interest of the receiver, pursuant to N.J.S.A. 12A:9–301.

Thus, the first issue to be determined is whether the filing of the continuation statement and its acceptance by the Secretary of State's Office in December, 1967 continued the effective date of the original statement from March, 1970 to March, 1975. The applicable statute is as follows:

*N.J.S.A. 12A:9–403*

"(2) . . . Any other filed financing statement (one which does not have a stated maturity date) is effective for a period of 5 years from the date of filing. The effectiveness of a filed financing statement lapses . . . on the expiration of such 5-year period, . . ., unless a continuation statement is filed prior to the lapse. Upon such lapse the security interest becomes unperfected.

(3) A continuation statement may be filed by the secured party . . . (ii) otherwise within 6 months prior to the expiration of the 5-year period specified in subsection (2). Any such continuation statement must be signed by the secured party, identify the original statement by file number and state that the original statement is still effective. Upon *timely* filing of the continuation statement, the effectiveness of the original statement is continued for 5 years after the last date to which the filing was effective whereupon it lapses in the same manner as provided in subsection (2) unless another continuation statement is filed prior to such lapse." (emphasis added).

Petitioner contends that the wording of the statute is that while a continuation statement "may be filed" within six months prior to the expiration of the five-year period, such filing within that period of time is not mandatory, but merely directory. Respondent urges, however, that the continuation state-

ment, if filed at all, must be filed during the six-month period immediately prior to the expiration date of the original financing statement. In support of this assertion, the Bankruptcy Judge reasoned that: (1) "It is a cardinal principal of statutory interpretation that full effect should be given, if possible, to *every* word of a statute." (2) ". . . it has been well settled for more than a century that filing requirements of this type (N.J.S.A. 12A:9–403(3)) will be strictly enforced." (3) Under predecessor statutes (e. g. Chattel Mortgage Act), premature filing voided the security interest.

 There seems to be a paucity of authority construing this and like statutes. However, it would seem clear that N.J.S.A. 12A:9–403(3) requires a *timely* filing and indicates that the filing period is six months prior to expiration of the five-year period.

Nevertheless, petitioner submits that contrary to the Bankruptcy Judge's opinion, the filing requirements need not be adhered to strictly. The Uniform Commercial Code (UCC) specifically provides that:

"[t]his Act shall be liberally construed and applied to promote its underlying purposes and policies." N.J.S.A. 12A:1–102.

However, it cannot be thought that in applying a liberal construction of the UCC, clear and unambiguous language should be overlooked to defeat requirements of timely filing imposed by 12A:9–403(3). This, in itself, would lead to absurd results in that it would provide for tacking, a result which impliedly is sought to be avoided precisely by the timeliness standard established in the statute.

"If the words of a statute are affirmative and absolute, and show that no discretion was intended to be given those delegated the task of making the statute operate, than the words of the statute must be given effect peremptorily. Only when construing a statute where an ambiguity exists, or a

literal interpretation may lead to absurd results, may there be resort to the principle that the spirit of the law controls the letter. *Giordano v. City Commission of City of Newark,* 2 N.J. 585, 594, 67 A.2d 454 (1949). Presently the court is faced with neither an ambiguous statute nor a statute which creates absurdities; moreover, the letter amplifies the spirit." *Mulligan v. New Brunswick,* 83 N.J.Super. 185, 191, 199 A.2d 82, 85 (Law Div. 1964).

The Court finds, therefore, that N.J.S.A. 12A:9–403(3) presents, in clear and unambiguous language, the standard which must be followed in filing a continuation statement. There exists no ambiguity in the word "may" as such word refers to whether or not a continuation statement is, in fact, filed. It has no reference to the prescribed six-month period in which to file. Further indication of this intent may be found in the final sentence of 12A:9–403(3), which states as follows:

"Succeeding continuation statements may be filed in the same manner to continue the effectiveness of the original statement."

 The phrase "the same manner" must necessarily refer to the time limit imposed in the initial sentence of the section as well as to other requirements set forth for filing of the continuation statement (e. g. signed by the secured party, etc.).

 Petitioner contends, however, that assuming, *arguendo*, that the Bank submitted its continuation statement to the Secretary of State prematurely, it was still filed on December 29, 1967 with the Office, pursuant to the express language of N.J.S.A. 12A:9–403(1), which states as follows:

"Presentation for filing of a financing statement, tender of the filing fee and acceptance of the statement by the filing officer constitutes filing under this chapter."

There is no dispute that the Bank conformed with these requirements for filing. Further, there is no doubt that the Office of the Secretary of State accepted the continuation statement without hesitation and *without* advising the secured party that if the statement was deemed premature, it would have no effect and would be destroyed along with the original financing statement upon its natural expiration date. Therefore, petitioner asks this Court to find that the continuation statement was valid in that it was accepted by the Secretary of State's Office.

In so urging, the Bank relies on *In Matter of Royal Electrotype Corporation,* 485 F.2d 394 (3d Cir. 1973). In that case, the Secretary of State of Pennsylvania accepted for filing a security agreement but in indexing the agreement, indexed the debtor as the creditor and the creditor as the debtor, with the result that a search of the records against the actual debtor would not have disclosed the filed security agreement. The Third Circuit Court of Appeals held, in reversing the District Court, that the secured party does not bear the risk that the filing officer will improperly perform his duties and that under Pennsylvania .law, the creditor's interest was perfected as soon as the financing statement was presented and accepted, and the filing fee tendered.

> "Cases from other jurisdictions have consistently held that the secured party does not bear the risk of improper indexing by the filing officer *so long as the secured party has not by his own conduct caused the error.*" Id. at 397. (emphasis added).

The Court concedes that when a creditor fulfills his obligations with regard to filing and in spite of this, a mistake results due to an error by the Office of the Secretary of State, then clearly the creditor should not be penalized. However, although the action or inaction by the Secretary of State here is unfortunate in that it failed to notify the Bank that its continuation statement was filed prematurely and further it failed to inform the Bank in March, 1971, that the continuation statement was not effective to extend the original financing statement, with the resultant destruction of both documents, these steps were consequences of the petitioner's erroneous filing of the continuation statement almost two years prior to the prescribed period set forth in N.J.S.A. 12A:9–403(3).

■ A continuation statement must be timely filed to continue the effectiveness of the original filed financing statement. If the requirement of timely filing is not met, there results a lapse, as public officers cannot bind the government by acts outside their express authority.

■ I must conclude that the acceptance of the continuation statement by the Secretary of State for filing cannot render it effective to support the Bank's petition for reclamation. To further support this conclusion, it should be noted that Princeton admits having received notice from the Secretary of State that the Secretary would begin accepting continuation statements for filing as of July 1, 1967 (4½ years after the UCC became effective in New Jersey). This should have sufficed to put petitioner on notice that continuation statements filed less than 4½ years after the original financing statement would be ineffective.

The final point urged by petitioner is that even if the Bank's security interest is not perfected under the UCC, its unperfected security interest is still prior to any interest of the receiver in bankruptcy. This claim is based on N.J.S.A. 12A:9–301, which states, in pertinent part, as follows:

> "(1) Except as otherwise provided in subsection (2), an unperfected security interest is subordinate to the rights of . . .
>
> (b) a person who becomes a lien creditor without knowledge of the security interests and before it is perfected;

\* \* \* \* \* \*

(3) A 'lien creditor' means a creditor who has acquired a lien on the property involved by attachment, levy or the like and includes an assignee for the benefit of creditors from the time of assignment, and a trustee in bankruptcy from the date of the filing of the petition or a receiver in equity from the time of appointment. *Unless all the creditors represented had knowledge of the security interests such a representative of creditors is a lien creditor without knowledge even though he personally has knowledge of the security interest.* (emphasis added).

In construing the above provisions with those of Section 70(c) of the Bankruptcy Act, 11 U.S.C.A. Section 110(c), it is urged by petitioner that the Receiver only stands in the shoes of an actual creditor who extended credit during the period of time a security interest was unperfected, not a hypothetical or ideal creditor. However, under Section 70(c), the Receiver, as of the date of bankruptcy, shall have the rights and powers of:

"(3) A creditor who upon the date of bankruptcy obtained a lien by legal or equitable proceedings upon all property, whether or not coming into possession or control of the court, upon which a creditor of the bankrupt upon a simple contract could have obtained such a lien, *whether or not such a creditor exists.* (emphasis added).

■ Therefore, the Receiver takes on the status of an "ideal" or "perfect creditor" regardless of whether there were any creditors who had or did not have knowledge of the unperfected security interest. "That section (70(c)) confers on the trustee in bankruptcy the status of an ideal hypothetical creditor and as such gives him the status of a creditor without notice, despite any actual knowledge he may personally have had at the time of bankruptcy and regardless of the fact that there may not exist any actual creditor without notice." *In Matter of Babcock Box Co.,* 200 F.Supp. 80 (D.

Mass.1961). See also *Taplinger v. Northwestern National Bank,* 101 F.2d 274 (3d Cir. 1938); *In re Lindsey,* 131 F.Supp. 11 (D.N.J.1955).

■ Accordingly, the receiver is accorded "ideal" status as the perfect creditor who has complied with all requirements necessary under the applicable law for a lien by legal or equitable process. He has such status irrespective of whether there are actually any such creditors in existence as his status is derived not by the nature of the creditors of the estate, but by the Bankruptcy Act itself. *4A Collier on Bankruptcy,* Section 70.53 at p. 636 (14th ed.).

Thus, the assertion by petitioner that in order for the receiver to maintain an action under Section 70(c), he must demonstrate that actual creditors exist who did not have knowledge of the Bank's unperfected security interest is erroneous. Reliance on *Pacific Finance Corporation v. Edwards,* 304 F.2d 224 (9th Cir. 1962) is misplaced, as although it does support this contention, the holding is clearly contrary to the overwhelming weight of authority and has been severely criticized. See *4A Collier,* Section 70.50, pp. 611–614.

Proof that all creditors did have knowledge of the unperfected security interest, which the Bank has not even attempted to establish, would nevertheless not suffice to impute this knowledge to the receiver and effect his rights under the strong-arm clause of Section 70(c). Therefore, "there is no necessity for demonstrating that he does or does not represent at least one actual creditor without notice." *4A Collier,* Section 70.-53, p. 636–7.

■ In conclusion, it is apparent that a state statute, such as N.J.S.A. 12A:9–301(1), cannot serve to deprive the receiver of his federally created status as a lien creditor without notice. As previously stated, the actual knowledge of all the creditors has no bearing on the rights of the receiver under Section 70(c). Therefore, the Uniform Com-

mercial Code cannot be deemed to affect this position. Accordingly, the Bank's unperfected security interest does not have priority over the rights of the receiver in bankruptcy.

Thus, the petition of the Princeton Bank and Trust Company is denied.

Submit an order.