In the Matter of CALLAHAN MOTORS, INC., a corporation of the State of New Jersey, Debtor.

Appeal of PRINCETON BANK AND TRUST COMPANY.

No. 75–2197.

United States Court of Appeals, Third Circuit.

Argued April 8, 1976.

Decided July 8, 1976.

Kleinberg, Moroney, Masterson & Schachter, Robert S. Molnar, Newark, N. J., for Callahan Motors, Inc.

Garrett M. Heher, Smith, Stratton, Wise & Heher, Princeton, N. J., for Princeton Bank and Trust Co., Ann Reichelderfer, Princeton, N. J., on the brief.

Before GIBBONS, Circuit Judge, CLARK,* Associate Justice, and HUNTER, Circuit Judge.

OPINION OF THE COURT

JAMES HUNTER, III, Circuit Judge:

The dispute involved in this appeal arose in the aftermath of a petition under Chapter XI of the Bankruptcy Act[1] filed by Callahan Motors, Inc. (formerly known as Cregar Motors). Appellant Princeton Bank and Trust Co., which had been involved in the financing of the debtor's automobile dealership, filed a motion to reclaim certain property (funds and automobiles) which it

---

* Sitting by designation.

1. 11 U.S.C. § 701 et seq.

asserted were covered by a financing statement and continuation statement filed under the provisions of Article 9 of the Uniform Commercial Code.[2]

The matter came on for hearing before the Bankruptcy Judge, and the following factual background, not disputed here, was developed.

Appellant filed its financing statement in March 1965. This statement, which was derived from a security arrangement in the nature of trust receipt agreements, complied in all respects with the requirements of the UCC. Since the financing statement did not state a shorter duration, it was effective for 5 years, and, absent an effective continuation statement, would expire in March, 1970.[3] On or about July 1, 1967, the Department of State of New Jersey sent the following letter to all banks:[4]

IMPORTANT NOTICE TO SECURED PARTIES OF FINANCING STATEMENTS FILED UNDER UNIFORM COMMERCIAL CODE

12A:9—403.

(2) A filed financing statement which states a maturity date of the obligation secured of 5 years or less is effective until such maturity date and thereafter for a period of 60 days. *Any other filed financing statement is effective for a period of 5 years from the date of filing.* The effectiveness of a filed financing statement lapses on the expiration of such 60 day period after a stated maturity date or on the expiration of such 5 year period, as the case may be, unless a continuation statement is filed prior to the lapse. Upon such lapse the security interest becomes unperfected. A filed financing statement which states that the obligation secured is payable on demand is effective for 5 years from the date of filing.

(3) A continuation statement may be filed by the secured party (i) within 6 months before and 60 days after a stated maturity date of 5 years or less, and (ii) otherwise within 6 months prior to the expiration of the 5 year period specified in subsection (2). Any such continuation statement must be signed by the secured party, identify the original statement by file number and state that the original statement is still effective. Upon timely filing of the continuation statement, the effectiveness of the original statement is continued for 5 years after the last date to which the filing was effective whereupon it lapses in the same manner as provided in subsection (2) unless another continuation statement is filed prior to such lapse. Succeeding continuation statements may be filed in the same manner to continue the effectiveness of the original statement.

To remain effective, Continuation Statements must be filed for all Financing Statements filed January 2, 1963 and thereafter. This office will accept Continuation Statements beginning July 1, 1967.

PLEASE FILE EARLY.

There was no evidence that appellant ever received the letter,[5] but counsel for appellant stated that "we probably received it." (App. p. 46a).

---

2. It is undisputed that New Jersey is the source of relevant state law. The Uniform Commercial Code became effective in New Jersey on January 1, 1963, as Subtitle 1 of N.J.S.A. 12A. The section of the Code dealing with the expiration of financing statements and the filing of continuation statements is N.J.S.A. 12A:9–403, pertinent portions of which are set forth in the text.

3. N.J.S.A. 12A:9–403(2).

4. Affidavit of H. McGrory, supervisor of the Uniform Commercial Code Section of the Department of State. Appendix, p. 26A.

5. The only arguably relevant testimony was that of P. Harkness, an Assistant Vice President of Princeton Bank and Trust Co. He testified that he was not familiar with any of the notices issued by the Secretary of State with regard to the filing of Financing Statements under the Uniform Commercial Code. In view of Mr. Harkness' testimony that he had not had occasion to file financing statements or continuation statements as part of his duties, his lack of familiarity with the letter in question is of doubtful significance. See p. 6–7a.

On December 29, 1967, appellant filed a continuation statement on the appropriate form,[6] referring by number to the filing of March 5, 1965. The Secretary of State accepted the filing fee and delivered to appellant an acknowledgment copy evidencing the filing of the continuation statement. This action was in accordance with the usual practice of the Secretary at that time.

In January, 1968, however, this practice changed. From that date on, the Secretary of State's office returned unfiled to secured parties those continuation statements deemed "premature," namely those submitted more than six months prior to the expiration date of the financing statement, with a form explanation. Appellant never received any notification that its continuation statement was deemed premature, although it had been filed 27 months prior to the expiration date of the financing statement.

In March, 1971, the Secretary removed from the file and destroyed both appellant's original financing statement (by then expired) and the continuation statement (deemed premature). No notice of this action was given to appellant.

The debtor experienced financial difficulties of increasing severity, sold automobiles covered by the security agreement with appellant "out of trust," and ultimately filed its Chapter XI petition in February, 1973. Appellee Sterns was appointed receiver.[7]

The Bankruptcy Judge denied the motion to reclaim property in May, 1973.[8] The district court denied a petition for review, holding that the pertinent provisions of the UCC require that a continuation statement be filed within the last six months before the expiration of the financing statement and that appellant's continuation statement was therefore premature and ineffective to extend the perfected security interest beyond March, 1970. The district court also rejected appellant's argument that even if the security interest was thus unperfected, it was nevertheless prior to the trustee's claim.[9] *In re Callahan Motors,* 396 F.Supp. 785 (D.N.J.1975).

On this appeal, Princeton Bank and Trust first contends that the district court erred in construing the reference in N.J.S.A. 12A:9–403(3) to the six month period immediately prior to the expiration of a financing statement as mandatory. Appellant stresses the language "[a] continuation statement may be filed . . . within 6 months prior to the expiration . . . ." and argues that a continuation statement *may* also be filed at any other time before expiration of the financing statement. Apparently there are no reported cases resolving this question; the trustee has cited two opinions of state attorneys general (Ohio and Iowa)[10] taking the "mandatory" position, i. e., that continuation statements filed more than six months before expiration are ineffective.

We need not detail the arguments from policy and rules of statutory construction which have been advanced by the parties and the court below. While we find much of the appellee's argument for a "mandato-

---

**6.** The form submitted was actually a multi-purpose form on which appellant checked boxes marked "Continuation" and "Other." The notation under "Other" concerned a change of address of the secured party. That the Secretary of State recognized this form as having two purposes is demonstrated by the fact that *two* $3.00 filing fees are marked "Pd." on the acknowledgment copy. See p. 23A.

**7.** The debtor was adjudicated a bankrupt on December 30, 1974, while this matter was pending in the district court.

**8.** The Bankruptcy Judge did enter an order directing the receiver to maintain in an interest-bearing account proceeds of the sale of vehicles claimed by appellant, pending review in the district court. This order was continued by the district court pending the disposition of this appeal.

**9.** This argument raises questions of the viability of the doctrine of *Pacific Finance Corp. v. Edwards,* 304 F.2d 224 (9th Cir. 1962), in this Circuit, and the applicability of that doctrine to the present facts. In view of our disposition of this case, we have no occasion to express any opinion on these issues.

**10.** These are reported at 14 UCC Rep.Serv. 860 (1974), and 12 UCC Rep.Serv. 1251 (1973), respectively.

ry" construction persuasive, we do not find it necessary to decide the question.

Appellant argues that even if the district court's interpretation of § 9–403(3) is correct as a general rule, that rule cannot apply here. Appellant relies on § 9–403(1) and *In re Royal Electrotype Corp.*, 485 F.2d 394 (3d Cir. 1973).[11] § 9–403(1) provides that

> Presentation for filing of a financing statement, tender of the filing fee and acceptance of the statement by the filing officer constitutes filing under this chapter.

The *Royal Electrotype* court held that a creditor was entitled to reclaim property even though a filing officer had misfiled a financing statement by reversing the names of the secured party and the debtor. The court relied on official UCC Comment 1 under § 9–407 (this comment also appears in the New Jersey version):

> Note, however, that under Section 9–403(1) the secured party does not bear the risk that the filing officer will not properly perform his duties: under that Section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered or the statement accepted by the filing officer.

This Comment, determined by the *Royal Electrotype* court to be a correct statement of state law,[12] fully justifies the result in that case. Its applicability to the present case, however, is less certain, since it is not immediately clear that a continuation state-ment is a "financing statement" within the meaning of § 9–403(1), or that events constituting "filing" constitute the "timely filing" required by § 9–403(3).

■ We need not, however, go so far as to adopt a general rule that acceptance of a continuation statement by a filing officer cures an untimely presentation. The present record discloses not just a simple acceptance of appellant's statement and fees, but a course of conduct by the Secretary of State which caused the asserted imperfection in filing almost as certainly as did the clerical error in *Royal Electrotype*. On these particular facts, we believe that the same result as in *Royal Electrotype* should follow.

■ Our consideration of the Secretary's conduct arguably should begin with the July, 1967 letter. The trustee argues that this letter served to put appellant on notice of the "proper" time for filing continuation statements. Even if we were to conclude that appellant should be found to have received this letter,[13] we could not agree with the trustee's analysis of its import. The first two paragraphs merely quote the statutory language. The concluding four lines could just as easily be interpreted as advising that continuation statements "for all Financing Statements filed January 2, 1963 *and thereafter*" (emphasis added) could and should be filed as soon after July 1, 1967 as convenient. Thus it may be that the July, 1967 letter, if received by appellant, triggered the filing which is now attacked as premature.[14]

---

**11.** *Royal Electrotype* involved Pennsylvania law, but we may assume without deciding that the same result would obtain under the analogous provisions of New Jersey law. See note 12, *infra*.

**12.** The court relied on indications that the Pennsylvania courts were "giving full force and effect to . . . the official comments accompanying the text." 485 F.2d at 397. Although such indications are perhaps less distinct in regard to New Jersey courts, we note that the comments have been cited, e. g. *Southern Jersey Airways, Inc. v. National Bank of Secaucus,* 108 N.J.Super. 369, 261 A.2d 399 (App.Div.1970); *A. J. Armstrong, Inc. v. Janburt Embroidery Corp.,* 97 N.J.Super. 246, 234

A.2d 737 (Law Div.1967), and we believe that the comments are at least some indication of New Jersey law.

**13.** Under New Jersey law, there is a presumption that mail properly addressed, stamped and mailed was received by the party to whom it was addressed. *National State Bank v. Terminal Construction Corp.,* 217 F.Supp. 341, 355 (D.N.J.1963), *aff'd* 328 F.2d 315 (3d Cir. 1964) (per curiam).

**14.** Appellee argues that the fact that the letter was sent four and one-half years after the effective date of the UCC is significant. This fact does indeed suggest that the Secretary viewed the six-month period as mandatory, but it alone

Whatever the effect of the letter, it appears that the Secretary's handling of appellant's December, 1967 submission caused the non-compliance, if any, with the UCC provisions. The Secretary, though deeming the continuation statement premature,[15] not only failed to convey this interpretation to appellant but, by accepting the filing fee and returning an acknowledgment of filing, acted affirmatively to give appellant every reason to believe that it was in compliance with all applicable state requirements. It seems certain enough that if the Secretary had followed his post-1967 policy of returning "premature" continuation statements unfiled, with an explanation, in dealing with appellant's submission, the latter would have filed a continuation statement during the six months prior to the March, 1970 expiration date.[16]

The prejudice to appellant was compounded when the Secretary in 1971 removed and destroyed appellant's financing and continuation statements without notifying appellant. Once again it seems entirely reasonable to suppose that if appellant had been informed of the Secretary's interpretation of the statute and consequent treatment of its filings, appellant would have promptly re-filed. Even though Princeton Bank's security interest had, in the view of the Secretary, become unperfected at this point, such a refiling would have been effective against the trustee in this proceeding.

In sum, we decline to decide whether, under New Jersey law, a continuation statement is timely if filed more than 6 months before the expiration of a financing statement or should always be deemed timely if accepted by the filing officer; we hold only that on these particular facts, a resolution of these questions so as to bar appellant's motion to reclaim would be inconsistent with the equitable character of bankruptcy proceedings. See *Bank of Marin v. England*, 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Pepper v. Litton,* 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939).

The judgment of the district court will be reversed and the proceedings remanded with a direction of a further remand to the referee to grant appellant's petition for reclamation to the extent justified by the financing and continuation statements.

---

cannot be said to have put appellant on notice of this viewpoint, in view of the language discussed in the text, indicating that continuation statements should be filed even for those financing statements filed after January 2, 1963.

**15.** Appellant also argues that the Secretary's pre-1968 practice of "accepting" continuation statements filed more than six months before the expiration of the financing statement constituted an administrative interpretation of the statute which should lead this court to adopt a "permissive only" view of the six-month period. We find that the record far more strongly supports the conclusion that the Secretary at all times considered such filings "premature." See, e. g., p. 28a, and note 14, *supra.*

**16.** Our characterization of the Secretary's conduct as improper and misleading is supported by the Opinion of the Attorney General of Ohio, discussed in the text at note 10:

I would recommend, however, that notice be given to those whose filings were accepted even though they were not timely. Such persons believe their filings to be effective and should be notified of their actual status. 14 UCC Rep.Serv. at 873.