In re Eugene L. & Helen M. **HAYS**
and Joseph M. & Jennifer L.
Hays, Debtors.

**Bankruptcy No. 84–00472.**

United States Bankruptcy Court,
N.D.Ohio, W.D.

Feb. 7, 1985.

Charles W. Ewing, Columbus, Ohio, for debtors.

John J. Hunter, Toledo, Ohio, for Defiance Production Credit.

## MEMORANDUM OPINION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court upon the Motion for Relief From Stay filed by the Defiance Production Credit Association (hereinafter PCA). The Court has conducted a Hearing on this Motion and has heard all the evidence to be offered on this issue. At the conclusion of that Hearing, the parties agreed that the only issue to be decided by this Court is whether PCA or the Farmers Home Administration (hereinafter FHA) has a superior lien on the proceeds of certain crops. As to this issue, the parties have submitted their written arguments and have had the opportunity to respond to the arguments made by opposing counsel. The Court has reviewed the evidence, arguments, and the entire record in this case. Based upon that review and for the following reasons the Court finds that FHA has a superior lien on the proceeds in question.

### FACTS

The Debtors-In-Possession in each of these two cases are a husband and wife engaged in a farming operation. The Debtor Eugene Hayes and the Debtor Joseph Hayes are father and son, respectively. Their farming operations are situated in two locations, one in Williams County, Ohio, and one in Steuben County, Indiana. The property which comprises the estates in each of these two cases is the same property. In light of this fact, the cases were consolidated for purposes of administration.

At the time the Motion for Relief From Stay was filed, the Debtors-In-Possession owed to PCA approximately Two Hundred Seventy-two Nine Hundred Thirty-two and 02/100 Dollars ($272,932.02) by virtue of two promissory notes in favor of PCA. These notes and the accompanying security agreements are part of an ongoing financial arrangement between the parties which began about 1976. On March 25 of that year, PCA filed a financing statement in the Williams County Recorders Office which reflected that PCA had taken a security interest in all the Debtors' growing crops, harvested crops, farm machinery, livestock, and equipment. Attached to that financing statement was an extension sheet which purported to describe the real estate on which the crops were located. This description was made by reference to a county road and the number of miles a particular parcel is located from a town that lies on that road.

On March 17, 1981, PCA filed a second financing statement in Williams County which indicated that PCA had a lien on the same collateral covered by its first filing. There is no evidence that a continuation statement was ever filed, nor is there any evidence that new value was given at the time of this second filing. On May 3, 1982, FHA filed a financing statement in Williams County which covered the same property as was covered in PCA's filings. The description of real estate in FHA's filing is made by reference to township and section numbers. It is unclear whether the real estate described in PCA's statement is the same as described in FHA's. However, to the extent it can be ascertained from the

documents, it appears to be the same land. The parties have agreed that all of the Williams County filings were either actually made in or indexed to the real estate section of the Recorder's records.

On April 21, 1978, PCA filed a financing statement in the Recorder's Office of Steuben County, Indiana. This financing statement contained a description of the same collateral that was covered in its statement filed in Williams County. There was only one entry on this statement as to the location of the real estate. The description of that land was given in relation to a highway and a town.

On May 5, 1980, FHA filed a financing statement in Steuben County that gave notice of its security interest in the same collateral covered by PCA's Indiana filing. On this statement there were listed four parcels of land, with the description of real estate made by reference to section and township number. On March 18, 1981, PCA filed a second financing statement in Steuben County covering the same collateral as was covered in their first statement. However, on this second statement, the real estate was described by a general reference to section and township number. Reference to the specific locations within the individual sections was not included. Again, it is unclear whether the land described in FHA's statement is the same as described in the statement filed by PCA; however, it appears to be. On March 31, 1982, PCA filed a continuation statement in Steuben County which referred to the financing statement filed on April 21, 1978.

Subsequent to these filings, the Debtors-In-Possession harvested certain crops from the real estate described in these financing statements. They have subsequently sold these crops as well as a portion of their livestock. As a result of an agreement between themselves and PCA, the Debtors have sequestered the proceeds generated by these activities pending the outcome of the Motion presently before the Court.

The Debtors-In-Possession have offered into evidence a copy of a letter dated April 19, 1982, wherein PCA indicated to FHA that it would agree to subordinate its liens on the Debtors' property to those of FHA. This letter does not reflect which county's crops were contemplated in this agreement. The Debtors have also offered a copy of a subordination agreement dated May 3, 1982, which is signed by PCA and which purports to grant to FHA a superior position with respect to the 1982 Steuben County crops. Although these documents were admitted into evidence without objection, there was virtually no testimony offered by either party which further explained their contents.

## LAW

As previously indicated, the only issue to be decided by the Court is whether or not PCA has, as to FHA, a superior lien on any of the proceeds in question. However, before the Court can begin a discussion of this case, it should be pointed out that even in view of this limited issue, a review of the evidence is made most difficult by the fact that it has been presented in less than the best of organized fashions. It is also made more difficult by the fact that the Court is unable to definitively ascertain, based upon the minimal descriptions in the financing statements, what real estate is covered by each of those statements. Had full legal descriptions been used, this problem would not have occurred. In addition, the arguments submitted by counsel fail to set forth with specific detail the factual circumstances of this case. Nevertheless, the Court has been able to find sufficient information so as to be able to determine the priority of liens as between PCA and FHA.

■ The priority of creditors that have a perfected security interest in the same collateral is addressed by the provisions of Ohio Revised Code § 1309.31(E) which state in pertinent part:

"(E) ... priority between conflicting security interests in the same collateral shall be determined as follows:

(1) in the order of filing if both are perfected by filing, regardless of which security interest attached first under divi-

sion (A) of section 1309.15 of the Revised Code and whether it attached before or after filing."

In Indiana, the issue of priority is addressed by Indiana Statutes Annotated § 26–1–9–312(5), the provisions of which are identical to the Ohio statute. Under these statutes, a creditor's priority is established by the order in which its security interests are perfected. Perfection of a lien on equipment, livestock, *see*, Ohio Revised Code § 1309.07(C), Indiana Statutes Annotated § 26–1–9–109(3), or crops is perfected by the filing of a financing statement in the recorder's office of the county in which the collateral is located. *See*, Ohio Revised Code § 1309.38, Indiana Statutes Annotated § 26–1–9–401. If the filings involve crops, the statements must contain a description of the land on which they are located. *See*, Ohio Revised Code § 1309.-39(C), Indiana Statutes Annotated § 26–1–9–402(3). In addition, financing statements filed in Ohio that cover crops must be indexed to the real estate records of the recorder's office. Ohio Revised Code §§ 1309.39(E), 1309.40, *see*, *Metropolitan Bank v. Stroh (In re Stroh)*, 44 B.R. 65 (Bkcy.N.D.Ohio 1984). It appears that in the present case, the financing statements are properly filed, thereby giving both PCA and FHA a *prima facia* position as perfected secured creditors. However, it must also be determined whether or not these filings effectively perfect the creditors security interest.

## I

A review of the facts finds that as to the Williams County property, PCA filed their first statement on March 25, 1976. Ohio Revised Code § 1309.40 states in pertinent part:

"(B)(1) ... Any ... filed financing statement is effective for a period of five years from the date of filing ..."

By virtue of this expiration period, PCA's perfection would lapse on March 24, 1981, if not continued. On March 17, 1981, PCA filed a second financing statement which listed the same collateral as was covered by their first filing. It did not make any

reference to PCA's first financing statement and did not reflect PCA's earlier interest.

In order to constitute a filing which effectively continues the perfection afforded by a financing statement, the filing:

"... must be signed by the secured party, identifying the original statement by file number and state that the original statement is still effective ..."

Ohio Revised Code § 1309.40(C). Financing statements and continuation statements serve a distinct and different purpose, and are not interchangeable within the meaning of Ohio Revised Code § 1309.40. PCA's second financing statement fails to include essential statutory elements of a continuation statement. Such disregard of a positive legislative enactment prescribing the conditions necessary for the preservation of a statutory lien cannot be overlooked. The filing of a new financing statement cannot be viewed as a substantial compliance with the statute. *See*, *Eastern Indiana Production Credit Ass'n v. Farmers State Bank*, 31 Ohio App.2d 252, 287 N.E.2d 824, 60 Ohio Op.2d 410 (1972). Therefore, it appearing that the filing of a second financing statement does not preserve PCA's first priority, and that PCA's perfection expired on March 24, 1981, it must be concluded that FHA, by virtue of their currently perfected security interest, has superior rights to that portion of the proceeds derived from the Ohio farm.

## II

With regard to the farm in Indiana, PCA's first financing statement was filed on April 21, 1978, thereby giving it an expiration date of April 20, 1983. *See*, Indiana Statutes Annotated § 26–1–9–403. As has already been shown, the filing of a second financing statement is insufficient to preserve the perfection of a security interest. Accordingly, PCA's second financing statement that was filed on March 18, 1981, is without effect. However, on March 31, 1982, PCA filed a continuation statement under the provisions of Indiana

Statutes Annotated § 26–1–9–403(3). That section states in pertinent part:

"(3) A continuation statement may be filed by the secured party ... within six (6) months prior to the expiration of the five (5) year period specified in subsection (2)."

As indicated in *In re Callahan Motors, Inc.*, 396 F.Supp. 785 (D.N.J.1975), *rev'd on other grounds*, 538 F.2d 76 (3rd Cir.1976), Op.Att'y.Gen. of Ohio, 14 U.C.C. Rep. 860 (1974), Op.Att'y.Gen. of Iowa, 12 U.C.C. Rep. 1251 (1973), this section of the Uniform Commercial Code, as adopted in the various states, does not permit continuation statements to be filed prior to the beginning of the six month period which precedes the expiration of a financing statement.

■ The provisions of Section 26–1–9–403(3) explicitly state that effectiveness of the original filing is made contingent upon the "timely filing of a continuation statement." Timely filing, as the term is used in that statute, clearly means filing within the time provided therein. A continuation filed prior to the six month period is not timely filed and cannot have the effect of continuing the original statement. In the present case, it appears that PCA's continuation statement was filed more than six months prior to the expiration of their original statement. In view of the untimely filing of that statement, it must be concluded that PCA's perfection has lapsed, despite the existence of the second financing statement. It must also be concluded the FHA, having properly perfected its security interest in the Indiana property, has the first interest in that property.

■ It should be noted that the Court is cognizant of the provisions of Ohio Revised Code § 1309.31(B) and Indiana Statutes Annotated § 26–1–9–312(2) which provide a first lien to any creditor that extends, within three months from the planting of crops, new value which enables the debtor to produce those crops in that year. Although there is some indication that these statutes may apply in this case, the fragmentary nature of the evidence does not allow the Court to make such a finding. As previously indicated, the evidence presently before the Court does not illustrate whether the proceeds from prior years were used to finance the crops now under dispute, or whether they were financed by new value. Without such evidence, it must be concluded that any party asserting a lien based upon the operation of those statutes has failed to sufficiently demonstrate the existence of that interest.

The Court also notes that with regard to the subordination agreement, if it were to be held to be effective as between PCA and FHA, FHA would have a superior interest in the proceeds. However, because it is unclear as to the origin of these proceeds, this Court cannot find that FHA should prevail based upon this purported agreement. Even if it were clear as to what property was covered by that document, a photocopy of an agreement along with a letter referring to the agreement are, by themselves, of questionable value in assessing the intent of the parties to subordinate their liens. Had the Debtors-In-Possession been able to produce original documents or had they supplied testimony supporting these copies, the Court would be able to weigh more seriously the ramifications of these documents. Nevertheless, without such supporting evidence, the Court must conclude that FHA does not prevail on the basis of an agreement to subordinate.

## CONCLUSION

Based upon the foregoing analysis, the Court finds that FHA has the first priority to the proceeds under dispute. As the result of PCA's failure to properly continue the perfection of its security interest in the Williams County property, FHA has succeeded to the first lien position. Similarly, the untimely filing of PCA's continuation statement has caused a lapse in its perfection of its security interest in the Indiana property. FHA, having a currently perfected security interest, possesses the first priority to the Indiana property. Therefore, it must be concluded that FHA has

having prevailed in both Ohio and Indiana and is entitled to the proceeds.

In reaching these conclusions the Court has considered all the evidence and arguments of counsel, regardless of whether or not they are specifically referred to in this Opinion.

It is ORDERED that the Farmers Home Association be deemed to have the first and best lien on the proceeds being held in escrow by the parties pending the outcome of this litigation.