**In the Matter of RAINBOW MANUFAC-
TURING COMPANY, Debtor.**

**RAINBOW MANUFACTURING
CO., Plaintiff/Appellee,**

v.

**The BANK OF FITZGERALD,
Defendant/Appellant.**

**Civ. A. No. 91–296–2–MAC(DF).**

United States District Court,
M.D. Georgia,
Macon Division.

Feb. 12, 1993.

Robert W. Chasteen, Jr., Fitzgerald, GA, James C. Marshall, Macon, GA, for plaintiff/appellee.

Jerome Lewis Kaplan, Wesley J. Boyer, Macon, GA, for defendant/appellant.

FITZPATRICK, District Judge.

Before the court is the Bank of Fitzgerald's appeal from the Memorandum and Order of U.S. Bankruptcy Judge Robert F. Hershner, Jr., granting partial summary judgment to Plaintiff in this adversary proceeding. Judge Hershner entered his order on July 23, 1991, 129 B.R. 702 (Bankr. M.D.Ga.). The Bank timely filed this appeal and both sides have thoroughly briefed the issues before the court.

## FACTS

The Bank of Fitzgerald ("the Bank") took a security interest in what appears to be virtually all of the real and personal property belonging to Rainbow Manufacturing Company ("the Debtor"). The Bank filed its Financing Statement with the clerk of Ben Hill County on April 23, 1985. In what appears to have been an abundance of caution, the Bank included a maturity date of October 21, 1985, on this Financing Statement.[1] On November 6, 1985, the Bank filed a continuation statement because the Georgia Statute in effect at the time required a secured party to file a continuation statement within 20 days after the stated maturity date on the financing statement. 1978 Ga.Laws 1081 (former Ga.Code Ann. § 109A–9–403(2)). The Bank filed a second continuation statement on May 12, 1986, showing that the maturity date was now "On Demand."

During the time of these transactions and various filings with the Ben Hill County Clerk, Georgia commercial law was in a state of flux. During the 1985 General Assembly, the state legislature passed various amendments to Article 9 of Georgia's commercial code. Among these amendments was a requirement that, upon the effective date of the statute, all financing statements filed in the state must contain a maturity date. The Bank conceded to the Bankruptcy Court that it filed its financing statement prior to the effectiveness of this amendment.

---

1. At the time the Financing Statement was filed Georgia law did not require secured parties to place maturity dates on their financing statements. The law requiring maturity dates be-  came effective July 1, 1985, a mere nine weeks after the Financing Statement in this case was filed.

The 1985 amendments to Article 9 met with substantial controversy and scholarly rebuke. *See, e.g.*, Carson, Conrad & Dobbs, *H.B. 712: New Requirements for Financing Statements and Continuations Statements Filed in Georgia*, 22 Ga. St.Bar J. 6 (1985); Marshall, *Commercial Law*, 38 Mercer L.Rev. 85, 100 (1985). This uproar resulted in the 1986 General Assembly further amending § 11–9–403. These 1986 amendments became effective March 26 of that year. Significantly, the maturity date requirement was eliminated and a new subsection (8) was added to § 403 "saving" still perfected creditors for a period of five years after the date of their last filing, notwithstanding any maturity date shown on a valid financing or continuation statement.

## DISCUSSION

### Perfection by Its Own Actions

#### A. Timely Filing of Continuation Statements

█ The question of whether a continuation statement filed more than six months prior to the expiration of the financing statement was timely filed first arose in 1975. *In re Callahan Motors, Inc.*, 396 F.Supp. 785 (D.N.J.1975), *rev'd on other grounds* 538 F.2d 76 (3d Cir.1976). What has become known as the "Callahan Rule" holds that a prematurely filed continuation statement is not valid because it was not "timely filed." This interpretation of the timing requirements of U.C.C. § 9–403(3) has been accepted by the courts that have addressed the issue.

The Kentucky Court of Appeals revisited this issue and came to the same conclusion its predecessors had reached. *Banque Worms v. Davis Construction Co.*, 831 S.W.2d 921 (Ky.Ct.App.1992). Just as in this case, there was no state law available to the Kentucky court to assist in deciding the issue. That court, like this one, was forced to examine the opinions of other courts that had struggled with the issue and come to a resolution. The Kentucky Court of Appeals adopted and applied the "Callahan Rule." *Banque Worms*, 831 S.W.2d at 924.

Scholarly commentators are nearly as unanimous in their opposition to the courts' interpretation of the statute as the courts are in their interpretation. Professor Gilmore, considered by some to be the father of Article 9, argues vehemently against requiring continuation statements to be filed only within the last six months of the previously effective filing. Gilmore, *Security Interests in Personal Property* 587 (1967). Other scholars have joined the debate, arguing that there is " 'no reason to invalidate the continuation statement.... The continuation statement prematurely filed provides the same notice to interested persons as one "timely filed." ' " *Banque Worms*, 831 S.W.2d at 923 (quoting Leibson & Nowka, *The Uniform Commercial Code of Kentucky* § 8.3(E) (1983)).

In rejecting these arguments, the courts have universally read the statute to mean what it appears to mean. To be "timely filed" the continuation statement must be filed in the proper office within the last six months of the effective period of the previous filing. *In re Adam*, 96 B.R. 249, 252–53 (Bankr.D.N.D.1989). As noted by the Bankruptcy Court for the District of Nebraska, "the matter has been discussed enough times by the attorney general of various states and by enough courts, that if the legislatures of the various states and the drafting committee of the Uniform Commercial Code wanted to change the plain language of the statute, there has been plenty of time to do it." *In re Hubka*, 64 B.R. 473, 476 (Bankr.D.Neb.1986). That statement was made nearly six and a half years ago and its wisdom is even more apparent now than it was then.

For this Court to rule otherwise, i.e., to permit a premature continuation statement to be valid, would put Georgia at odds with every other state that has affirmatively ruled on this issue. Such a ruling by a Federal Court would be improper because this Court is bound to find and apply state law as it is interpreted by the state's courts, as are all Federal Courts. A Federal Court faced with finding state law with

little or no guidance from the state's courts must be especially careful not to forge law that is inconsistent with existing precedent, even if the only precedent that exists is from other jurisdictions. This Court remains unpersuaded that Georgia Courts would reject the long-standing interpretation of a problem common to U.C.C. § 9–403(3).

The purpose of the various Uniform Codes is to promote consistency among the various states and to further coherence in the business law of this nation. *Citizens Bank v. Ansley,* 467 F.Supp. 51, 55 (M.D.Ga.) *aff'd,* 604 F.2d 669 (5th Cir.1979). For this court to fly in the face of 18 years of apparently unanimous precedent from other jurisdictions would be to frustrate this most essential purpose of the Commission on Uniform Laws. The Court agrees that following precedent merely for the sake of consistency could lead to absurdity, particularly if the authority from other jurisdictions is flawed in its reasoning. *Citizens Bank,* 467 F.Supp. at 55. However, this Court is not convinced that the "Callahan Rule" is such bad precedent. The Court concludes, therefore, that a continuation statement filed before the statutory six month period is not timely filed and is invalid.

■ The Bank filed its Financing Statement on April 23, 1985. Under the law in effect at the time this statement was filed, it was effective for a period of five years. Ga.Code Ann. § 109A–9–403(2). No maturity date was required in April because the 1985 Amendments did not apply to filings made before July 1, 1985. 1985 Ga.Laws § 5 at 1517 (this section of the Act was not codified by the General Assembly). This means that the financing statement lapsed of its own accord on April 23, 1990. Since no continuation statement was filed by the Bank between October 22, 1989 and April 23, 1990, the financing statement lapsed and the Bank became unperfected on April 23, 1990, unless the Bank took some other action that continued its perfected status.

### B. The § 11–9–403(8) Saving Clause

■ The Court finds that the Bank's action of including a maturity date on the April 23, 1985, filing was an attempt to comply with the 1985 amendments to Georgia's Article 9. This April financing statement contained a maturity date of October 21, 1985. The Bank would have had to file a continuation statement within 20 days after the maturity date to remain perfected. It did just that with its filing of November 6, 1985. This first continuation statement was filed just 15 days after the maturity date shown on the original financing statement.

The Bank entered April 21, 1986, as the maturity date on its first continuation statement relevant to the Debtor's line of credit. Under then existing law, unless the Bank filed another continuation statement within 20 days of the new maturity date, it would become unperfected because the financing statement would lapse. As counsel for the Bank asserts, the Bank probably calendared its need to file a continuation statement at the time it filed the November continuation statement.

■ The General Assembly then meets for its 1986 session. During that session Article 9 is amended yet again. As part of those amendments the legislature added subsection (8) to § 11–9–403. This new subsection provides

(8) Except as provided in subsection (6) of this Code section, *any* financing statement or *continuation statement which was filed on or after July 1, 1985,* ... is effective for a period of five years from the date of filing notwithstanding any maturity date specified ... unless such financing statement or continuation statement lapsed prior to March 26, 1986.

O.C.G.A. § 11–9–403(8) (Supp.1992) (emphasis added). This subsection was intended to save financing and continuation statements that had been filed in conformity with the 1985 amendments to Article 9. The last clause, "unless such financing statement or continuation statement lapsed prior to March 26, 1986", excludes from coverage those financing statements that had lapsed prior to the effective date of the 1986 amendment. Therefore, only secured parties who had failed to continue their

perfected security interest, and secured creditors whose security interest had legitimately expired were not continued, or saved, by operation of law in this new code section.

The Bank could be properly perfected as a result of its April financing statement and the November continuation statement. Section 11–9–403(8) continues the November continuation statement for a period of five years, regardless of the stated maturity date on the form. As a result of these acts the bank would be perfected until November 6, 1990—five years after the continuation statement was filed.

The Bank also filed a continuation statement on May 12, 1986. It was filed more than six months before the expiration of the previously valid filing. Even if November 1985 filing was extended by O.C.G.A. § 11–9–403(8), a new continuation statement would not be required until May of 1990 (six months before the November 1985 statement expired). As discussed above, such a premature filing is not timely and would not continue the perfected status of the secured creditor under 9–403(3).

However, subsection (8) to 9–403 is part of the 1986 amendments and is unique to Georgia. This subsection makes any financing or continuation statement, filed after July 1, 1985, effective for a period of five years. The effective period is regardless of any prior law to the contrary. Even if the "Callahan Rule" was the law in Georgia under 9–403(3), subsection (8) changes that rule. Furthermore, the effective period of the continuation statement is not the anniversary of the original financing statement, but extends five years from the date of the continuation statement's filing.

O.C.G.A. § 11–9–403(8) is clear and unambiguous. Subsection (8) extends *any* continuation statement for five years as long as it was filed after July 1, 1985. This interpretation comports with the plain and direct language of the statute. *"[A]ny fi-*

*nancing or continuation statement* which was filed on or after July 1, 1985, ... is effective for a period of five years." O.C.G.A. § 11–9–403(8) (Supp.1992) (emphasis added).

Additionally, this result does not conflict with the precedent from other states concerning the problems with premature filing of continuation statements. As stated earlier, subsection (8) is unique to Georgia. The General Assembly has apparently deemed it appropriate to change the state of the law in Georgia. Prematurely filed continuation statements are effective for five years from the date of its filing. Therefore, the anniversary date to require a new filing is within six months from the end of five years from the date of the last continuation statement's filing. Each new continuation statement creates its own period of effectiveness independent of the date the financing statement was originally filed.

There is no direct conflict between 403(3) and 403(8). The two sections can operate together in complete harmony. The Court's interpretation of the effect of subsection (8) gives meaning and effect to all parts of section 9–403. Subsection (3) works to allow filing officers (Superior Court Clerks) to refuse to accept continuation statements until the last 6 months of the previous filing's effectiveness. O.C.G.A. § 11–9–403(3). Once the new filing is accepted, however, it is in force for a period of five years, not from the filing date of the financing statement, but from the date of the filing of the new statement. O.C.G.A. § 11–9–403(8).[2]

The Court readily agrees that statutes should be interpreted to give effect to all parts of the statute. *General Motors Acceptance Corp. v. Whisnant*, 387 F.2d 774 (5th Cir.1968). The Court believes that its interpretation gives effect to all parts of the statute. Any other interpretation

---

**2.** The Bankruptcy Court expressed its concern that a conclusion contrary to the one it arrived at would force record searchers to dig back in the records 10 years. That is not so under the interpretation of this Court. Any filing by a secured creditor is in effect for five years. A researcher would only have to search the records back five years to see if any statement had been filed. Such a reasonable searcher would find either a financing statement or a continuation statement in effect, if one existed.

strains the plain language of subsection (8) and forces this Court to search for a meaning to the statute in a nonexistent legislative history.

Neither Congress, nor the Georgia General Assembly, write on a "clean slate" when drafting amendments to existing laws. *Dewsnup v. Timm,* —— U.S. ——, ——, 112 S.Ct. 773, 779, 116 L.Ed.2d 903 (1992). Additionally, the Court readily assumes both bodies are aware of the existing law when they draft amendments to statutes. "[W]here the language is unambiguous, silence in the legislative history cannot be controlling." *Id.* The statute clearly and unequivocally states that it applies "notwithstanding any provision of prior law to the contrary." This is a plain statement of the legislature's intent to contravene the law as the General Assembly believed it to be at the time the amendment was adopted. Any other conclusion would require this court to infer legislative intent from a nonexistent legislative history; something this court unconditionally refuses to do.

Any continuation statement, like the one filed on May 12, 1986, is effective for five years, or until May 12, 1991. At the time the Debtor filed for Bankruptcy, the Bank security interest in land and personal property of the Debtor was perfected.

It is important to note that the Bank did everything it thought it should to comply with Georgia's Article 9. In the midst of confusing and conflicting statutes, the

Bank attempted to continue its perfected interest in the assets of the Debtor. This is not a case where a secured party slept on its rights and is now attempting to invent ways to stay perfected.

The situation faced by the Bank in this case is similar to the special circumstances and confusing information sent to the secured party in *Callahan Motors, Inc. v. Princeton Bank & Trust Co.,* 538 F.2d 76 (3d Cir.1976). In that case, the Third Circuit held that because of a confusing letter from the Secretary of State's Office, the filing location for New Jersey, the secured party would be relieved from the draconian result of forfeiting its perfected interest because it had filed too early. The Bank of Fitzgerald in this case was similarly attempting to comply with a confusing and changing legal landscape. This Court finds that it would be grossly unfair and inequitable to so harshly punish a perfected secured creditor because it misinterpreted a statute and it will not do it.[3]

Accordingly, the judgment and order of the Bankruptcy Court is **REVERSED.**

SO ORDERED.

---

**3.** Because of the Court's conclusion that the Bank is perfected by virtue of its May 1986 filing, it is unnecessary to reach the question of

whether the filing of a financial statement by ITT Small Business Corporation was sufficient to perfect the Bank.