**COATS AMERICAN, INC., Appellant,**

v.

**SUMMIT NATIONAL BANK, Appellee.**

**In re NATIONAL MILL, INC.,**
**TIN: 55–1456899, Debtor.**

**Civil No. 2:96–CV–0162WCO.**
**Bankruptcy No. 95–21809.**

United States District Court,
N.D. Georgia,
Gainesville Division.

July 3, 1997.

John Weldon Harbin, W. Scott Creasman, Powell, Goldstein, Frazer & Murphy, Atlanta, GA, Bradley E. Pearce, Moore & Van Allen, NationsBank Corporate Center, Charlotte, NC, for Coats American, Inc.

Fred Bryan Wachter, Wachter Law Firm, Marietta, GA, for Summitt Nat. Bank.

Albert Fred Nasuti, Thompson, O'Brien, Kemp & Nasuti, Norcross, GA, for National Mill, Inc.

### ORDER

O'KELLEY, Senior District Judge.

The captioned case is before the court for consideration of appellant Coats American, Inc's bankruptcy appeal [0–0]. The court heard oral argument in this case on April 17, 1997, at the United States District Courthouse, Gainesville, Georgia.

Coats American, Inc. ("Coats"), an unsecured creditor in the bankruptcy case of National Mill, Inc. ("NMI"), appeals from the bankruptcy court's order dated September 23, 1996, granting Summit National Bank's ("Summit") motion for relief from stay. The issue on appeal is whether the bankruptcy court erred in concluding that a UCC continuation statement, filed by Summit prior to the six-month period set forth in O.C.G.A. § 11–9–403(3), extended the period of protection of Summit's security interest in certain of NMI's assets beyond the date on which Summit's original period of protection would otherwise have expired.

### Facts

NMI is a Georgia corporation that, prior to the commencement of this bankruptcy case, had its principal operations in Hochston, Jackson County, Georgia.

In 1990, Summit and NMI entered into a secured financing agreement whereby Summit loaned $347,272.61 to NMI. As collateral security for its obligation to Summit, NMI granted Summit a security interest in NMI's inventory, accounts, equipment, general intangibles, and other assets located in Hochston, Georgia. Summit perfected its security interest by filing a UCC–1 financing statement with the Clerk of the Superior Court for Jackson County, Georgia, on July 26, 1990. The financing statement did not contain a maturity date.

On May 20, 1994, approximately fourteen (14) months prior to the date on which the financing statement would cease to be effective, Summit filed a UCC continuation statement referencing the financing statement. Summit did not file a continuation statement within the six-month filing period set forth in O.C.G.A. § 11–9–403(3).

On December 14, 1995, Coats and other creditors filed an involuntary Chapter 7 bankruptcy petition against NMI. On January 18, 1996, NMI filed a voluntary Chapter 7 bankruptcy petition. By order dated March 12, 1996, the bankruptcy court consolidated the two bankruptcy cases and established December 14, 1995, as the petition date for NMI's bankruptcy case.

The bankruptcy court subsequently approved a sale of certain of NMI's equipment. The sale proceeds were held in escrow pending resolution of Summit's right to receive the proceeds.

On May 24, 1996, Summit filed a motion for relief from stay, seeking authorization from the bankruptcy court to obtain full control of the escrowed sales proceeds. After Coats filed an objection to Summit's motion, the bankruptcy court conducted a hearing and entered an order granting Summit relief from the stay. That order is the subject of the instant appeal. Coats argues that Summit's continuation statement was filed prematurely and thus does not extend the protection period established by the July 26, 1990 financing statement.

## Legal Analysis

In reviewing bankruptcy court judgments, a district court functions as an appellate court. The district court reviews the bankruptcy court's legal conclusions *de novo*. *In re JLJ Inc.*, 988 F.2d 1112, 1116 (11th Cir.1993)(*citing In re Goerg*, 930 F.2d 1563, 1566 (11th Cir.1991)). The bankruptcy court's factual findings, however, must be accepted by the district court unless they are clearly erroneous. Fed. R. Bank. P. 8013. The district court may not make independent factual findings. *In re JLJ Inc.*, 988 F.2d at 1116. If the bankruptcy court is silent or ambiguous as to an outcome determinative factual question, the case must be remanded to the bankruptcy court for the necessary factual findings. *Id.* (*citing In re Cornelison*, 901 F.2d 1073, 1075 (11th Cir.1990); *In re Sublett*, 895 F.2d 1381, 1384 (11th Cir. 1990)).

■ This case involves the interpretation of a statute. The facts are not in dispute. Accordingly, the appropriate standard of review is *de novo*. *In re JLJ Inc.*, 988 F.2d at 1116.

■ O.C.G.A. § 11–9–403(3) provides in relevant part:

■ A continuation statement may be filed by the secured party within six months prior to the expiration date specified in subsection (2) of this Code section. . . .

O.C.G.A. § 11–9–403(3). Summit filed its UCC continuation statement prior to the six-month filing period set forth in subsection (3). The bankruptcy court held that Summit's continuation statement extended the protection of Summit's security interest in NMI's assets through the date on which the bankruptcy case commenced. Under the bankruptcy court's ruling the majority of NMI's assets are subject to Summit's security interest and NMI's unsecured creditors, including Coats, may receive no distribution in the bankruptcy case.

The bankruptcy court relied on O.C.G.A. § 11–9–403(8) in concluding that Summit's continuation statement extended the protection of Summit's security interest. Subsection (8) provides:

(8) Except as provided in subsection (6) of this Code section, any financing statement or continuation statement filed on or after

July 1, 1985, which described collateral not consisting only of consumer goods as defined in Code Section 11–9–109, or for which the secured obligation as defined in subsection (1) of Code Section 11–9–402 originally was greater than $5,000.00, is effective for a period of five years from the date of filing, in the case of financing statements, or five years from the date of the expiration of the five-year period of effectiveness of the financing statement or immediately preceding continuation statement, in the case of continuation statements, notwithstanding any maturity date specified in any such financing or continuation statement and notwithstanding any provision of prior law to the contrary, unless such financing statement or continuation statement lapsed prior to March 26, 1986.

O.C.G.A. § 11–9–403(8).[1] The bankruptcy court followed the reasoning set forth in *Rainbow Mfg. Co. v. Bank of Fitzgerald (In re Rainbow Mfg. Co.)*, 150 B.R. 857 (M.D.Ga. 1993), and determined that subsection (8) provides that any continuation statement filed after July 1, 1985, extends the protection of a security interest provided by the perfection of the relevant financing statement for a period of five years from the date of filing. *In re Rainbow Mfg. Co.*, 150 B.R. at 861.

Coats makes several different arguments in opposition to the bankruptcy court's interpretation of subsection (8). Coats first argues that subsection (8) does not clearly provide that a prematurely filed continuation statement is effective. Although at first blush this argument appears straight-forward, the statutory language is in fact quite troubling.

The district court in *In re Rainbow Mfg. Co.* held that "O.C.G.A. § 11–9–403(8) is clear and unambiguous. Subsection (8) extends any continuation statement for five years as long as it was filed after July 1, 1985." *In re Rainbow Mfg. Co.*, 150 B.R. at 861. However, subsection (8), as codified in

O.C.G.A. § 11–9–403(8), is not so clear and unambiguous.

Subsection (8), as codified in O.C.G.A. § 11–9–403(8), provides that any financing statement or continuation statement filed on or after July 1, 1985, "is effective for a period of five years from the date of filing, in the case of financing statements, **or five years from the date of the expiration of the five-year period of effectiveness of the financing statement or immediately preceding continuation statement, in the case of continuation statements,....**" O.C.G.A. § 11–9–403(8) (emphasis added). The emphasized language appears to contradict the holding in *In re Rainbow Mfg. Co.* in that it sets forth a separate period of protection for continuation statements. Under the emphasized language cited above, an individual/entity could file a financing statement on one day and a continuation statement the next day and obtain a ten-year period of protection.

The district court in *In re Rainbow Mfg. Co.* did not address the emphasized language set forth above. The court held simply that "[p]rematurely filed continuation statements are effective for five years from the date of its filing." *Id.* at 861. Consequently, *In re Rainbow Mfg. Co.* appears inconsistent with the language of O.C.G.A. § 11–9–403(8). However, after consulting the Georgia Laws, the court is confident that the court's opinion in the *In re Rainbow* case follows the law as enacted by the Georgia General Assembly. Subsection (8) was subsequently codified incorrectly in the Official Code of Georgia.

The Georgia Laws 1986 Session sets forth the Georgia General Assembly's adoption of § 11–9–403(8) and provides:

(8) Except as provided in subsection (6) of this Code section, any financing statement or continuation statement which was filed on or after July 1, 1985, which described collateral not consisting only of consumer goods as defined in Code Section 11–9–109, or for which the secured obligation as defined in subsection (1) of Code Section 11–9–402 originally was greater than $5,000.00, is effective for a period of five

---

1. The financing statement and continuation statement at issue in this case are not covered by any of the exceptions to subsection (8).

years from the date of filing notwithstanding any maturity date specified in any such financing or continuation statement and notwithstanding any provision of prior law to the contrary, unless such financing statement or continuation statement lapsed prior to the effective date of this subsection.

Ga. L.1986, p. 361, § 2.[2] Apparently, the emphasized language cited above from the subsection (8) version set forth in the Official Code of Georgia was never adopted by the Georgia General Assembly. The subsection (8) version adopted by the Georgia General Assembly clearly states that any financing statement or continuation statement meeting the requirements of subsection (8) is effective for a period of five years from the date of filing. It does not set forth a separate period of protection for continuation statements. The statute as adopted by the Georgia General Assembly was codified incorrectly in the Official Code of Georgia. Accordingly, this court finds that subsection (8), as adopted by the Georgia General Assembly, is clear and unambiguous and provides that any financing statement or continuation statement meeting the requirements of subsection (8) is effective for a period of five years from the date of filing.

Coats makes several other arguments in support of its position based upon legislative intent and principles of statutory interpretation. Coats makes various assertions regarding the purpose behind subsection (8) and the intent of the Georgia General Assembly in adding subsection (8) to O.C.G.A. § 11–9–403. However, Coats cites no legislative history in support of its assertions. Moreover, O.C.G.A. § 11–9–403 was amended after the decision in *In re Rainbow Mfg. Co.* was handed down and subsection (8) was not changed.

Accordingly, without opining as to the purpose of subsection (8) in conjunction with the six-month filing period set forth in subsection (3), and noting that the law as adopted by the Georgia General Assembly provides a five-year period of protection for continuation statements from the date of filing, the court

hereby AFFIRMS the bankruptcy court's order granting Summit's motion for relief from stay [0–0].

---

2. This subsection was amended in 1988 but simply inserted the date of "March 26, 1986" in lieu of the phrase "the effective date of this subsection." *See* Ga. L.1988, p. 13 § 11.