**In re Tommy M. BROWN and Sally C. Brown d/b/a Boulder Printing and/or Boulder Printing Service, Debtors.**

**Tommy M. BROWN and Sally C. Brown d/b/a Boulder Printing Service, and Robert J. Cunningham, Trustee, Plaintiffs-Appellants,**

v.

**BOULDER SERVICES, INC., Defendant-Appellee.**

Civ. A. No. 85–K–434.
Bankruptcy No. 84–B–00617 M.
Adv. No. 84–C–733.

United States District Court,
D. Colorado.

Dec. 24, 1986.

Ronald B. Porter, Boulder, Colo., Nancy D. Miller, Sterling and Miller and Robert J. Cunningham, Denver, Colo., for plaintiffs-appellants.

David Oppenheim, U.S. Trustee, Denver, Colo. and Barton S. Balis, Balis, Frieling & Barrett, Boulder, Colo., for defendant-appellee.

## MEMORANDUM OPINION AND ORDER

KANE, District Judge.

### I. BACKGROUND

This is an appeal from Bankruptcy Judge Patricia Clark's finding that Appellee, Boulder Services, Inc., perfected its security interest in the business sold to Appellants, Tommy and Sally Brown. I affirm.

On July 30, 1984 the Browns filed their "Complaint to Recover Property of the Estate and Determine the Validity and Priority of Claim" seeking to recover monies paid to Boulder Services and determine the priority of Boulder Services' claim under The Bankruptcy Code, 11 U.S.C. §§ 547, 549, and 550. Boulder Services answered as defendant.

Hearing was held, October 23, 1985, before Bankruptcy Judge Clark. By order filed November 5, 1985 (entered on the docket November 6, 1984), she denied the Browns' complaint to recover property of the estate and determined Boulder Services' claim was a perfected secured claim. On November 16, 1985, the Browns instituted this appeal seeking to reverse the court's order and to remand the case to the bankruptcy court with instructions.

### II. JURISDICTION AND STANDARDS FOR DECISION

Before I examine the merits of this appeal, I shall set forth the jurisdictional basis and standards for decision of this opinion.

I have jurisdiction to hear this appeal by virtue of the authority contained in 28 U.S.C. § 158(a):

"The district courts of the United States shall have jurisdiction to hear appeals from final judgments, orders, and decrees, ... of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title."

The manner of taking such an appeal is governed by Rules of Bankruptcy Procedure, Rule 8001(a):

"An appeal from a final judgment, order, or decree of bankruptcy judge to a district court ... shall be taken by filing a notice of appeal with the clerk of the bankruptcy court within the time allowed by Rule 8002."

Under Rules of Bankruptcy Procedure, Rule 8013, I may affirm, modify, reverse or remand a judgment of bankruptcy court. It has been stated many times, but most succinctly in *In re Hammons*, 438 F.Supp. 1143, 1147–48 (S.D.Miss.1977) *rev'd on other grounds* 614 F.2d 399 (5th Cir.1980):

"[The District] Court is bound to accept the Bankruptcy Judge's findings of fact unless they are clearly erroneous. Similarly, due regard in this context must be given to the lower court's opportunity to hear firsthand the testimony of the witnesses. However, this same presumption does not apply to conclusions of law, and this Court may make an independent examination and determination of the ultimate legal conclusions to follow from the facts. *In re McCoy*, 330 F.Supp. 533, 534–35 (D.Kan.1971)....

"The 'clearly erroneous' standard was explained by the Supreme Court in *Comm. v. Duberstein*, 363 U.S. 278, 80 S.Ct. 1190, 4 L.Ed.2d 1218 (1960), wherein the Court stated:

'A finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. [citation omitted]. The rule itself applies also to factual inferences from undisputed basic facts ...'

"*Accord, Inland Sec. Co., Inc. v. Kirshner*, 382 F.Supp. 338, 344 (W.D.Mo. 1974)."

### III. STATEMENT OF FACTS

The bankruptcy court found that the Browns purchased a going business concern from Boulder Services, Inc. A security agreement was executed by the parties to the sale. The security agreement set forth the names and signatures of the par-

ties, their mailing addresses, and contained an elaborate description of the secured collateral. The total amount of the secured interest was $275,000.00. In addition to this security agreement with Boulder Services, the Browns obtained a loan from the First National Bank and Trust Company of El Dorado, Kansas for the down payment on the business ($40,000.00). The First National Bank and Trust Company secured its $10,000.00 loan to the Browns with the same collateral as did Boulder Services.

The bankruptcy court further found that two financing statements utilizing the uniform UCC–1 Form were filed with the secretary of state on June 1, 1983. Each financing statement bore the debtors' names and signatures. Both financing statements listed the First National Bank and Trust Company of El Dorado, Kansas as the secured party. The financing statements, each with its own consecutive financing number, indicated that the statements represented a *"[s]econd security interest in equipment per attached Exhibit 'A'"* (emphasis added). Attached to one financing statement was a copy of the signed security agreement between the Browns and Boulder Services, Inc. Attached to the other financing statement was a copy of the same security agreement, exclusive of the page bearing the signatures of the parties.

The bankruptcy court considered testimony elicited from Mr. Robert Gillespie, the administrative officer for the Uniform Commercial Code in the office of the Colorado Secretary of State. Mr. Gillespie testified, and the court found, that filed financing statements and security agreements are indexed according to the debtor's name. A potential creditor may then make an "information request" which results in a computer printout showing the name and address of the debtor, the filing and expiration dates of any relevant financing statement, and the name and address of the secured party. The information request (computer printout) in the instant case did *not* list Boulder Services as a secured party.

Information request printouts, however, do not describe the collateral underlying the security agreement or financing statement. In order for a creditor to examine this critical information he or she must make a "copy request". A copy request provides the requesting party with copies of the financing statements and all other documents filed with the financing statements. In the instant case, a "copy request" would have provided an interested creditor with the security agreement between Boulder Services and the Browns.

Mr. Gillespie testified that prudent creditors would not rely solely on the computer printout in deciding whether to extend credit to a given individual. A more prudent approach would be to make a "copy request" in order to examine the copies of the actual documents listed on the computer printout. (Transcript at 45–46).

The Browns argue Boulder Services' security interest was not perfected because its name did not appear on the computer printout as a secured creditor in order to alert other potential creditors of the encumbered status of the Browns' property. Moreover, the Browns assert Boulder Services' security interest was never perfected because it was never filed correctly.

The bankruptcy court ruled in favor of Boulder Services and concluded the security interest was filed and perfected. The court noted prospective creditors could have contacted the debtors who then would have been charged with providing the information desired. A creditor also could make a "copy request" and receive copies of financing statements and security agreements listed under the debtor's name. The court held that a prudent inquiry would have disclosed the nature of Boulder Service's security interest. The court also held the errors in filing the security agreement were so minor that they could not have misled any prospective creditors.

## IV. CONCLUSIONS OF LAW

The ultimate issue on this appeal is simply: whether or not Boulder Services is a secured creditor with a perfected security

interest. Since the bankruptcy judge did not rule on the priority between Boulder Services and the First National Bank of El Dorado, Kansas, neither will I.

The Browns argue Boulder Services is not a secured creditor and the bankruptcy judge erred in ruling it as such. The Browns assert that enroute to making this determination, the bankruptcy judge erred in five respects: (1) in requiring the Browns to prove the existence of an actual creditor who was misled by Boulder Services' "purported filing"; (2) in assuming that Boulder Services' security agreement was properly filed simply because it was contained within the secretary of state's records as an attachment of the filing of another creditor; (3) in deciding that Boulder Services' security agreement was properly filed and perfected despite its not appearing on the secured creditor information provided by the secretary of state (the "information request"); and, (4) in determining the Browns would realize a "windfall" if Boulder Services were found not to be a secured creditor.

I shall discuss each of these arguments in turn.

### A. *No Evidence of Any Creditor Having Been Misled.*

The alleged error is that the bankruptcy court effectively imposed the burden upon the Browns of proving that an *actual* creditor was *actually* misled, rather than the burden of showing that "a hypothetical creditor, despite reasonable inquiry, might have been misled." (Browns' Brief at 9.)

### THE STANDARD APPLIED BY THE BANKRUPTCY JUDGE

I find no merit in the Browns' argument because the bankruptcy court's reasoning comports with the standard proposed by the Browns. The bankruptcy court, in holding Boulder Services' security interest to be perfected, stated *"[a]ny prudent creditor* would have discovered the defendant's interest through reasonable inquiry". (emphasis added). Order at 6. The court also concluded the cases considering filing

errors have disregarded "minor errors which are not misleading." *Roberts v. International Harvester Credit Corp.*, 143 Ga.App. 206, 237 S.E.2d 697 (1977); Colo. Rev.Stat. § 4-9-402(8) (Cumm Supp.1986). The critical fact is that even though Boulder Services' name was not *indexed* as a secured creditor, Judge Clark held this would not mislead a potential creditor. Her finding was not "clearly erroneous". Thus, she did in fact apply the legal standard the Browns claim she should have applied.

### ERROR NOT MISLEADING

■ "The 'notice filing' system adopted by the Uniform Commercial Code requires that a secured party provide for public record enough information to alert interested parties that there may be a prior security interest". *In re Colorado Mercantile,* 299 F.Supp. 55, 58 (D.Colo.1969). As the bankruptcy court noted in the instant case, "it is extremely important that the financing statements set forth the debtor's correct name and address because financing statements are indexed by the debtor's name". (Order at 4.) Conversely, "[s]ince financing statements are indexed under the debtor's name and not under the name of the secured party, a mistake in the secured party's name would ordinarily not be important". *In re Colorado Mercantile, supra,* involved a financing statement which correctly listed the debtor's name. The *creditor's* name, however, was designated as O.M. Scott Credit Corporation instead of O.M. Scott & Sons Company. The creditor petitioned to reclaim its security interest and moved for summary judgment. The bankruptcy referee denied the motion. The district court reversed, holding, as a matter of law, that the financing statement provided "sufficient additional information to enable a prudent examiner to ascertain the exact state of affairs *through further inquiry* ". *Id.* at 58. (Emphasis added.) Analogizing that reasoning to the instant case, a "copy request" (which produces all financing statements) would have produced

entirely satisfactory information concerning Boulder Services.

Article 9 of the UCC provides a mechanism by which an interested potential creditor can obtain information regarding his potential debtor. Colo.Rev.Stat. § 4–9–407(2) (1973), requires the filing officer, upon the request of any person, to furnish either a certificate listing a debtor's outstanding security encumbrances or actual copies of the financing statement or security agreement. These are the "information" and "copy" requests mentioned by Mr. Gillespie. (Transcript at 44–45.)

The policy of the UCC and the cases applying it require a potential creditor to make inquiry beyond the superficial information resulting from an "information request". The Browns, by their own statement, admit that the certificate issued by the filing officer was incomplete because it did "not show the nature of the collateral involved ..." (Brown brief at 20.) However, the information request produced sufficient information to notify any potential creditor of the encumbered status of the Browns' property. "Further inquiry" in the instant case would have been to make a copy request whereupon any potential creditor would have discovered Boulder Services' security agreement.

Accordingly, the Browns' argument fails with respect to the bankruptcy judge's choice of standards to apply because even under the standard of law requested by the Browns, the security interest was filed and perfected properly. The judge's decision was not based on whether a party was actually misled as the Browns suggest. Instead, I find that the decision was based on whether "a hypothetical creditor, despite reasonable inquiry, might have been misled", which is exactly the standard for which the Browns argue. Accordingly, the Browns' argument with respect to this issue, fails of its own weight.

## B. *Boulder Services' Security Agreement Was Filed Properly.*

■ Next, the Browns argue Boulder Services' security interest was not filed properly under the terms of the UCC because instead of presenting the security agreement and paying the fee, Boulder Services did not present its security agreement as a separate document and incorrectly presented it as an attachment to the bank's financing statement.

Colo.Rev.Stat. § 4–9–403(1) (1973), provides two methods by which an instrument may be filed:

> Presentation for filing of a statement and tender of the filing fee *or* acceptance of the statement by the filing officer, constitutes filing under this article. (emphasis added).

It is uncontested that the security agreement in question bears the secretary of state's reception number (# 629714) and the date and time of filing (6/1/83; 3:05 p.m.). The witness from the secretary of state's office, Mr. Gillespie, testified that Boulder Services' security agreement was filed.

Q: [By Mr. Balis] Is that document [Boulder services' security agreement] filed in the secretary of state's office?

A: Yes it is.

Q: Does it have a date?

A: Yes.

Q: Does it have a reception number?

A: Yes, sir.

Q: Does it have a time of filing?

A: Yes, sir.

Transcript at 55.

In *In re May Lee Industries, Inc.,* 380 F.Supp. 1 (S.D.N.Y.), *aff'd* 501 F.2d 1407 (2nd Cir.1974), the debtors-in-possession appealed from the bankruptcy court's ruling that two banks had perfected security interests in certain collateral. The debtors sought to defeat one of the bank's security interests by arguing that it was not filed. The district court affirmed.

This Court, after reviewing the record, is of the opinion that Judge Galgay's finding that [the bank] filed its financing statement at the Register's Office on December 4, 1972, is not clearly erroneous.

The date stamp and filing number of the financing statement are *prima facia* evidence of filing on that date; the only evidence offered in rebuttal is that later [the financing statement] temporarily could not be found.

*Id.* at 2–3

Acceptance by the filing officer is all that Section 4–9–403(1) requires. Judge Clark based her finding on this competent evidence in addition to the testimony of the officer charged with administration of the UCC filing system. Her finding is fully supported by the record and cannot be held to be clearly erroneous. In the instant case, a potential creditor need only order the documents from the secretary of state. The creditor would see the Kansas bank's financing statement and would need simply to turn the page in order to discover Boulder Services' first security interest.

Having to ask for a copy request, instead of just an information request, is the Browns' whole case. They argue as if a copy request is not standard protocol. Further, they attempt to characterize Boulder Services' security agreement as "lodged deeply within the confines of the Secretary of State's office" and that the search for this security agreement poses "a minefield of confusion". The security agreement, however, was only as deeply lodged within the confines of the secretary of state's office as was the information describing the collateral. Indeed, discovering Boulder Services' security agreement was only as difficult as checking off the "copy request" box as opposed to the "information request" box on the filing officer's request form.

While the evidence clearly demonstrates the security agreement was filed with the secretary of state's office, I recognize there was a technical impropriety connected with the filing: the UCC–1 form (reception no. 629714), indicating the Kansas bank's second security interest, was placed on top of Boulder Services' security agreement. The court below made no findings as to why the documents were so positioned.[1] There are, however, only two possibilities.

Either the documents were properly tendered with Boulder Services' agreement on top of the UCC–1 form and the filing officer subsequently reversed them, or the documents were improperly tendered and the filing officer filed them as presented. In the former instance, Boulder Services could not be penalized for the filing officer's mistake. *In re May Lee Industries, supra,* ("debtor's contention that the secured party ... had the duty to ensure proper filing is without merit"); *In re Royal Electrotype Corp.,* 485 F.2d 394 (3rd Cir.1973) (court relies on the official comment to UCC 9–407 which states: "... under section 9–403(1) the secured party does not bear the risk that the filing officer will not perform his duties.").[2] In the latter instance, improper tender of the documents will not serve to defeat Boulder Services' security interest because the mistake could not and would not seriously mislead a potential creditor. *See* Part A, *supra. See also* Colo.Rev.Stat. § 4–9–402(8) (Cumm. Supp.1986) which states in pertinent part:

"Formal Requisites of Financing Statement.... (8) A financing statement substantially complying with the requirements of this section is effective even

---

1. At first glance, I am tempted to remand this case in order to ascertain why these documents were attached and filed with the Kansas bank's financing statement on top of Boulder Services' security agreement instead of as separate filings. Such a factual finding, however, is not necessary in this case. There is already enough factual evidence to demonstrate Boulder Services' security interest was filed and perfected properly.

2. The same language accompanies the UCC as enacted in Colorado. Colo.Rev.Stat. § 4–9–407 (1973) (Official Comment 1):

... Note, however, that under Section 9–403(1) the secured party does not bear the risk that the filing officer will not perform his duties: under that Section the secured party has complied with the filing requirements when he presents his financing statement for filing and the filing fee has been tendered *or the statement is accepted by the filing officer.* (emphasis added).

though it contains minor errors which are not seriously misleading." (emphasis added).

C. *The Bankruptcy Court's Conclusions Regarding the Case Had the Security Interest Not Been Deemed Properly Perfected Do Not Constitute Clear Error.*

Finally, the Browns argue the bankruptcy court's conclusion that "a finding that [Boulder Services'] security interest was not properly perfected could only act to prejudice this creditor and to provide a windfall to debtors as debtors-in-possession" was erroneous because there was no evidence to support it and because it imposes upon the debtor-in-possession a burden contrary to the statutes giving the trustee the status of a "hypothetical judgment lien creditor," 11 U.S.C. § 544(a).

The court's conclusions in this regard, however, are mere *dicta* because the court had already found the security interest *was properly filed* pursuant to other considerations. Because this case was not decided pursuant to the hypothetical set forth in the *dicta*, the bankruptcy court's decision cannot be reversed as "clearly erroneous".

## V. CONCLUSION

The Browns make much of the fact that these security agreements and financing statements were not positioned correctly. Although no factual finding was made as to how these documents came to be in their current state, this positioning of the documents caused Boulder Services' security agreement to be overlooked and thus omitted during the "indexing" process (entering the information into the computer). As a result, Boulder Services' security interest did not appear on the computer printout sheet. This mishap, however, cannot defeat Boulder Services' security interest. Despite these technical improprieties caused by unknown reasons, the security agreement was received by the secretary of state's office and contained all of the required information and signatures. Most importantly, the security agreement had all

of the necessary *prima facia* evidence to prove it was filed and received, i.e., a date and time received stamp, its own filing number, etc,. Because such minor errors are not seriously misleading, the bankruptcy court made no clear error in its ruling. IT IS THEREFORE ORDERED THAT the bankruptcy court's order is AFFIRMED.