In the Matter of RAINBOW MANUFAC-
TURING COMPANY, Debtor.

RAINBOW MANUFACTURING
COMPANY, Plaintiff,

v.

The BANK OF FITZGERALD,
Defendant.

Bankruptcy No. 91–50236.
Adv. No. 91–5043.

United States Bankruptcy Court,
M.D. Georgia,
Macon Division.

July 23, 1991.

Jerome L. Kaplan, Wesley J. Boyer, Macon, Ga., for plaintiff and debtor.

Robert W. Chasteen, Fitzgerald, Ga., James C. Marshall, Mercer Law School, Macon, Ga., for defendant.

Mark Roadarmel, Macon, Ga., Asst. U.S. Trustee.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Rainbow Manufacturing Company, Debtor, Plaintiff, filed a "Complaint to Avoid Lien and to Recover Preferential Transfers" on April 5, 1991. Plaintiff amended its complaint on April 18, 1991. The Bank of Fitzgerald, Defendant, filed its answer on May 3, 1991. Plaintiff filed its "Motion for Partial Summary Judgment" on May 28, 1991. Defendant filed its "Cross Motion for Partial Summary Judgment" on June 24, 1991. The Court, having considered the record and the briefs of counsel, now publishes its memorandum opinion on the motions for partial summary judgment.

The issue before the Court is whether Defendant had a perfected security interest in certain collateral when Plaintiff filed its bankruptcy case.

The material facts are undisputed. Plaintiff gave Defendant a security interest in certain personal property (the "collateral"). Defendant perfected its security interest by filing a financing statement on April 23, 1985. The financing statement provided that the maturity date was October 21, 1985.

Defendant filed a continuation statement on November 6, 1985 [1] (the "first continuation statement"). The continuation statement provided that the maturity date was April 21, 1986.

Defendant filed a second continuation statement on May 12, 1986 (the "second continuation statement"). This continuation statement provided that the maturity date was "On Demand."

In 1989, Plaintiff gave ITT Small Business Finance Corporation ("ITT") a security interest in its personal property. ITT filed a financing statement on June 9, 1989. The financing statement does not contain a maturity date. Exhibit "A" attached to the financing statement provides in part: "This security interest is expressly subordinate to a $350,000.00 "Revolving" line of credit in favor of The Bank of Fitzgerald (See Exhibit "D" attached hereto)."

Exhibit "D" to ITT's financing statement is a letter dated June 8, 1989, from ITT's attorney to Defendant, memorializing the agreement between ITT, Plaintiff, and Defendant.

Plaintiff filed its Chapter 11 petition under the Bankruptcy Code on January 18, 1991. Plaintiff contends that Defendant's security interest was not perfected when the bankruptcy petition was filed and may be avoided. The Georgia legislature made several changes in the method of perfecting security interests between 1985 and

---

**1.** Prior to July 1, 1978, Georgia law provided that a continuation statement filed within six months before or sixty days after the maturity date continued the effectiveness of the financing statement. *See* Ga.Code Ann. § 109A-9-403(2) and (3) (amended July 1, 1978); 1978 Ga.Law 1081.

1988.[2] Plaintiff and Defendant disagree on the effect these changes had on the perfection issue.

When Defendant filed the financing statement on April 23, 1985, Georgia Code section 11–9–403(2) and (3)[3] provided in relevant part:

> (2) Except as provided in subsection (6) of this Code section a filed financing statement is effective for a period of five years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the five-year period unless a continuation statement is filed prior to the lapse.... Upon lapse the security interest becomes unperfected, unless it is perfected without filing. If the security interest becomes unperfected upon lapse, it is deemed to have been unperfected as against a person who became a purchaser or lien creditor before lapse.
>
> (3) A continuation statement may be filed by the secured party within six months prior to the expiration of the five-year period specified in subsection (2) of this Code section. Any such continuation statement must be signed by the secured party, identify the original statement by file number, and state the original statement is still effective.... Upon timely filing of the continuation statement, the effectiveness of the original statement is continued for five years after the last date to which the filing was effective whereupon it lapses in the same manner as provided in subsection (2) of this Code section unless another continuation statement is filed prior to such lapse. Succeeding continuation statements may be filed in the same manner to continue the effectiveness of the original statement.

O.C.G.A. § 11–9–403(2) and (3) (amended July 1, 1985).

The financing statement was filed on April 23, 1985. Defendant admits that under the then-existing law, the financing statement remained effective for five years regardless of its stated maturity date. Thus, the original financing statement lapsed on April 22, 1990,[4] prior to the filing of Plaintiff's bankruptcy case.

Defendant contends, however, that the continuation statements extended the effective date of the financing statement. First, Defendant contends that the continuation statements were timely filed even though they were not filed "within six months prior to the expiration" of the financing statement. Neither Plaintiff nor Defendant cite any Georgia cases on the effect of a prematurely filed continuation statement. In *Citizens Bank v. Ansley,*[5] the district court stated:

> The Uniform Commercial Code was developed and enacted to establish standard business laws throughout the United States. Uniform interpretation and application of the Code promotes the general welfare by simplifying interstate business activity. Generally speaking, Georgia courts should apply the Code as it is applied in other jurisdictions and should avoid disharmonious interpretations. However, such reasoning when carried to the extreme would result in Georgia being consistently wrong simply for the sake of consistency, an obviously intolerable result. Georgia should not follow bad Code precedent from other jurisdictions.

467 F.Supp. at 55.

Defendant acknowledges that other jurisdictions hold that a continuation statement is ineffective if it is filed prior to the six-month period for filing a continuation

---

2. Applicable state law determines the extent and validity of liens in a bankruptcy estate. *Worthen Bank & Trust Co., N.A. v. Hilyard (In re Hilyard Drilling Co.)*, 840 F.2d 596, 599 n. 4 (8th Cir.1988); *In re Chaseley's Foods, Inc.*, 726 F.2d 303, 307 (7th Cir.1983); *Commercial Credit Co. v. Davidson*, 112 F.2d 54, 55 (5th Cir.1940).

3. O.C.G.A. § 11–9–403(2) and (3) (amended July 1, 1985).

4. *See Harrelson Rubber Co. v. Super Treads, Inc. (In re Super Treads, Inc.)*, 7 B.R. 532, 535 (Bankr.M.D.Ga.1980) (five-year period begins on day of filing and expires on midnight of day preceding anniversary date of filing).

5. 467 F.Supp. 51 (M.D.Ga.), *aff'd*, 604 F.2d 669 (5th Cir.1979).

statement. *See Armstrong v. United States (In re Adams)*, 96 B.R. 249, 252–53 (Bankr.D.N.D.1989); *In re Hubka*, 64 B.R. 473, 475 (Bankr.D.Neb.1986); *In re Hays*, 47 B.R. 546, 550 (Bankr.N.D.Ohio 1985); *In re Vermont Fiberglass, Inc.*, 44 B.R. 505, 509 (Bankr.D.Vt.1984).

Defendant urges this Court to reject these precedents, stating:

> The rule that premature filing renders continuation statements ineffective is just such bad Code precedent that [it] should not be followed in Georgia. The rule has been criticized by experts.
>
> To adopt such a rule furthers no substantial policy objective and works a substantial inequity upon the creditor who files prematurely. Under Georgia's county filing system, any prematurely filed continuation statement would be discovered by a diligent searcher. No reasonable searcher in Georgia would be misled by a premature filing.

Prior to July 1, 1985, a timely filed continuation statement extended the effectiveness of the financing statement for five years "after the last date to which the filing was effective...." The new lapse date would be five years after the original expiration date of the financing statement, not five years after the filing date of the continuation statement. *See* Op.Att'y Gen. Ga. U77–56 (1977); *Armstrong v. United States (In re Adam)*, 96 B.R. at 252–53; *In re Vermont Fiberglass, Inc.*, 44 B.R. at 508–09; *In re Davison*, 29 B.R. 987, 989 (Bankr.W.D.Mo.1983).

If the Court accepts Defendant's argument, then Defendant's continuation statement filed on November 6, 1985, would extend the effective date of the financing statement until April 21, 1995. This would require a record searcher to go back almost ten years and conflict with the record clearing provisions of the U.C.C. *See* U.C.C. § 9–403(3) (1977) Official Comment 2; *see also* O.C.G.A. § 11–9–407(2)(a) (Supp.1990). A creditor should not be required to search the records for the four and one-half years prior to the six-month period for the filing of a continuation statement. This would place a burden on a record searcher that is not required by the statute. *In re Vermont Fiberglass, Inc.*, 44 B.R. at 509; *Chrysler Credit Corp. v. United States*, 24 U.C.C. Rep.Serv. 794, 795–96 (E.D.Va. 1978).

■ The Court is persuaded that the phrase "within six months prior to the expiration of the five-year period" is clear as to legislative intent and that the Court must apply the statute as written. Thus, the Court holds that Defendant's prematurely filed continuation statements are ineffective to extend the effectiveness of the financing statement.

Defendant next contends that the 1985 amendment to Georgia Code section 11–9–403 saves the prematurely filed continuation statements. The 1985 Act made the following changes in the prior statute:

> (2) Except as provided in subsection (6) of this Code section a filed financing statement is effective for a period of five years from the date of filing *or until the twentieth day following the maturity date specified in the financing statement, whichever is earlier.* The effectiveness of a filed financing statement lapses on *the earlier of* the expiration of the five-year period *or the twentieth day following the maturity date* unless a continuation statement is filed prior to the lapse....
>
> (3) A continuation statement may be filed by the secured party within six months prior to the expiration date specified in subsection (2) of this Code section. Any such continuation statement must be signed by the secured party, identify the original statement by file number, state the original statement is still effective, *and specify the maturity date of the secured obligation or specify that such obligation is not subject to a maturity date....* Upon timely filing of the continuation statement, the effectiveness of the original statement is continued for a period of five years *from the date of filing of the continuation statement or until the twentieth day following the maturity date specified in the continuation statement, whichever is earlier,* whereupon it lapses in the same

manner as provided in subsection (2) of this Code section unless another continuation statement is filed prior to such lapse. Succeeding continuation statements may be filed in the same manner to continue the effectiveness of the original statement.

1985 Ga.Laws 1517, §§ 3, 4 (emphasis added to show change from prior statute).

Defendant's financing statement was filed prior to the effective date of the 1985 Act. Defendant's first continuation statement was filed within twenty days after the financing statement's maturity date of October 21, 1985. Defendant contends that the 1985 Act should be applied retroactive to its financing statement. Defendant contends that its continuation statement, therefore, was timely filed.

Georgia Code section 1–3–5 [6] provides, in part: "Laws prescribe only for the future; they cannot impair the obligation of contracts nor, ordinarily, have a retrospective operation." O.C.G.A. § 1–3–5 (1990). "A constitutional Act of the legislature is equivalent to a contract, and when performed, is a contract executed; and whatever rights are thereby created, a subsequent legislature cannot impair." *Spengler v. Employees Commercial Union Insurance Co.*, 131 Ga.App. 443, 206 S.E.2d 693, 700 (1974).

Section 5 of the 1985 Act provides: "Section 5. This Act shall become effective July 1, 1985, and shall apply to financing statements originally filed on or after said effective date." 1985 Ga.Laws 1517, § 5. Defendant argues that the text of the Official Code of Georgia only includes a reference to the effective date of the 1985 Act and does not include the reference that the Act applies to financing statements originally filed on or after July 1, 1985.

Georgia Code section 1–3–1(a) [7] provides, in part: "(a) In all interpretations of statutes, the court shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." O.C.G.A. § 1–3–1(a) (1990).

■ The Court is persuaded that the legislature intended that the 1985 Act "shall apply to financing statements originally filed on or after [July 1, 1985]." Defendant's financing statement was filed on April 23, 1985, a date prior to July 1, 1985. The Court is persuaded that the 1985 Act does not save Defendant's prematurely filed continuation statements.

Next, Defendant argues that its continuation statements were saved by "corrective legislation" in 1986. The 1986 Act made the following changes in the prior statute:

(2) Except as provided in subsections (6) *and (8)* of this Code section a filed financing statement is effective for a period of five years from the date of filing or until the twentieth day following any maturity date specified in the financing statement, whichever is earlier. *Except as provided in subsection (8) of this Code section*, the effectiveness of a filed financing statement lapses on the earlier of the expiration of the five-year period or the twentieth day following any maturity date specified in the financing statement unless a continuation statement is filed prior to the lapse. . . .

(3) A continuation statement may be filed by the secured party within six months prior to the expiration date specified in subsection (2) of this Code section. Any such continuation statement must be signed by the secured party, identify the original statement by file number, state the original statement is still effective, and *where both (i) the collateral described consists only of consumer goods as defined in Code Section 11–9–109 and (ii) the secured obligation as defined in subsection (1) of Code Section 11–9–402 is originally $5,000.00 or less*, specify the maturity date of the secured obligation or specify that such obligation is not subject to a maturity date. . . . Upon timely filing of the continuation statement, the effectiveness of the original statement is continued for a period of five years *after the date to*

---

6. O.C.G.A. § 1–3–5 (1990).

7. O.C.G.A. § 1–3–1(a) (1990).

*which the filing was effective* or until the twentieth day following any maturity date specified in the continuation statement, whichever is earlier whereupon it lapses in the same manner as provided in subsection (2) of this Code section unless another continuation statement is filed prior to such lapse. Succeeding continuation statements may be filed in the same manner to continue the effectiveness of the original statement.

1986 Ga.Laws 357, § 2 (emphasis added to show changes from prior statements). These sections became effective March 26, 1986.

In addition, the 1986 legislature adopted a new subsection, which provides:

(8) Except as provided in subsection (6) of this Code section, any financing statement or continuation statement which was filed on or after July 1, 1985, which described collateral not consisting only of consumer goods as defined in Code Section 11–9–109, or for which the secured obligation as defined in subsection (1) of Code Section 11–9–402 originally was greater than $5,000.00, is effective for a period of five years from the date of filing notwithstanding any maturity date specified in any such financing or continuation statement and notwithstanding any provision of prior law to the contrary, unless such financing statement or continuation statement lapsed prior to [March 26, 1986].

1986 Ga.Laws 357, § 2 (as amended by 1988 Ga.Laws 13, § 11). Subsection (8) applies to financing and continuation statements filed on or after July 1, 1985. 1986 Ga.Laws 357, § 3.

Essentially, the 1986 Act provided that certain financing statements and continuation statements filed on or after July 1, 1985, are effective for five years from the filing date, notwithstanding any stated maturity date.[8] The provision that a continuation statement must be filed within the six

months prior to the financing statement expiration date remained unchanged.

■ Defendant's financing statement was filed on April 23, 1985. It was effective until April 22, 1990. Defendant's continuation statements were not filed within the six months prior to the April 22, 1990, date. The Court is persuaded that the 1986 Act did not save Defendant's untimely filed continuation statements.

The Court now turns to Defendant's contention that its security interest was perfected by ITT's financing statement. ITT filed its financing statement on June 9, 1989, prior to the lapse of Defendant's financing statement and prior to the filing of Plaintiff's bankruptcy case.

Georgia Code section 11–9–402(1)[9] provides, in part:

(1) A financing statement is sufficient if it gives the names of the debtor and the secured party, is signed by the debtor, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor, contains a statement indicating the types, or describing the items, of collateral, ... A copy of the security agreement is sufficient as a financing statement if it contains the above information and is signed by the debtor.

O.C.G.A. § 11–9–402(1) (Supp.1991).

ITT's financing statement contained the name, address, and signature of the debtor. Section 2 of ITT's preprinted financing statement provides:

2. Secured Party(ies) Name and Address:

ITT Small Business Finance Corporation

400 Highway 169, Suite 417

Minneapolis, Minnesota,. 55426

ITT's financing statement was signed by Greg Duffey, an analyst with ITT.

---

**8.** The 1986 Act provided two exceptions not applicable in the case at bar. The first exception concerned financing statements which describe only consumer goods or goods less than $5,000. The second exception applies to financ-

ing and continuation statements that lapsed prior to March 26, 1986.

**9.** O.C.G.A. § 11–9–402(1) (Supp.1991).

Exhibit "A" describes the collateral and provides, in part: "This security interest is expressly subordinate to a $350,000.00 "Revolving" line of credit in favor of The Bank of Fitzgerald (See Exhibit "D" attached hereto.)"

Exhibit "D" to ITT's financing statement is a one page letter from ITT's attorney to Defendant's senior vice president, describing the arrangement between ITT, Plaintiff, and Defendant. This letter contains the name and mailing address of Defendant.

Neither Defendant's financing statement nor its security agreement was attached to ITT's financing statement. Defendant contends:

Taking the ITT filing in its entirety, that filing is sufficient to perfect [Defendant's] interest. No reasonable searcher of the U.C.C. filings in Ben Hill County could have been misled concerning [Defendant's] interest. The U.C.C. Form 1 which is the cover page of ITT's filing instructs the searcher to "SEE EXHIBIT 'A' ATTACHED HERETO AND BY THIS REFERENCE INCORPORATED HEREIN" for a description of collateral.

Defendant cites *Brown v. Boulder Services, Inc. (In re Brown)*,[10] to support its contention. In *Brown*, the debtor purchased a business from Boulder Services. The parties executed a security agreement which also met the requirements for a financing statement.[11] However, Boulder Services did not file a financing statement. The debtor then obtained a loan from a bank on the same collateral. The bank filed a financing statement, indicating that the financing statement represented a *"second* security interest in equipment per attached Exhibit 'A'."  Attached to the bank's financing statement was a copy of Boulder Services's security agreement.[12]

Boulder Services contended that this was sufficient to perfect its security interest in the collateral. The bankruptcy court and the district court agreed. The courts noted that financing statements are indexed under the debtor's name, not the creditor's name. Thus, a subsequent creditor would have discovered Boulder Services's interest through reasonable inquiry and examination of the actual documents.[13]

■ *Brown* is distinguishable on its facts. In *Brown*, Boulder Services's security agreement contained all of the required information for a financing statement. In the case at bar, Defendant's security agreement was not part of ITT's financing statement. A record searcher would be required to piece together ITT's twenty-nine-page financing statement in order to find all of the required information. Defendant has not cited a Georgia case that supports this procedure. In *United States v. Waterford No. 2 Office Center*,[14] the Georgia Supreme Court stated: "Knowledge of the claim of a security interest is not equivalent to knowledge of the contents of the financing statement." 271 S.E.2d at 791.

The Court is persuaded that Defendant's security interest was not perfected when Plaintiff filed its bankruptcy case. An order in accordance with this memorandum opinion will be entered this date.

## ORDER

In accordance with the memorandum opinion entered this date; it is

ORDERED that the "Motion for Partial Summary Judgment" filed by Rainbow Manufacturing Company, Plaintiff, on the 28th day of May, 1991, hereby is granted; and it is further

ORDERED that the "Cross Motion for Partial Summary Judgment" filed by The

---

10.  68 B.R. 670 (D.Colo.1986).

11.  *See* O.C.G.A. § 11-9-402(1) (Supp.1990) (financing statement must contain name and address of debtor and secured party, be signed by the debtor, and describe the collateral).

12.  68 B.R. at 671-72 (emphasis original).

13.  68 B.R. at 673-75.

14.  246 Ga. 475, 271 S.E.2d 790 (1980).

Bank of Fitzgerald, Defendant, on the 24th day of June, 1991, hereby is denied; and it is further

ORDERED that the security interest of Defendant as evidenced by its financing statement dated April 23, 1985, is deter-mined to have been unperfected when Plaintiff filed its bankruptcy case.

SO ORDERED.