In re Roger Dale ISRINGHAUSEN and Linda Sue Isringhausen, Debtors.

JERSEY STATE BANK, Plaintiff,

v.

Roger Dale ISRINGHAUSEN, Linda Sue Isringhausen, and the United States of America, Defendants.

Bankruptcy No. BK 90–50244.
Adv. No. 92–5029.

United States Bankruptcy Court, S.D. Illinois.

March 3, 1993.

Lee Barron, Jerseyville, IL, for Jersey State Bank.

Steven N. Mottaz, Alton, IL, for Isringhausens.

Gerald Burke, Asst. U.S. Atty., Fairview Hgts., IL, for U.S.

OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

On July 11, 1984, Jersey State Bank (hereafter "bank") loaned debtors $175,000.00 and debtors signed a promissory note and a security agreement giving the bank a lien in their farm machinery and equipment. The bank perfected its lien, on July 13, 1984, by filing a financing statement covering the machinery and equipment.

On May 1, 1985, the United States of America, Farmers Home Administration (hereafter "FmHA"), filed a financing statement covering the same farm machinery and equipment.[1] On May 31, 1985, debtors executed several promissory notes in order to borrow $120,000.00 from FmHA as an operating loan and to reamortize several other outstanding loans owed to FmHA. On this same date, to secure the repayment of the notes, debtors executed a security agreement granting FmHA a lien on their farm machinery and equipment.

On January 9, 1989, exactly six months and four days before its financing statement on the farm machinery and equipment was to lapse, the bank filed a continuation statement for the purpose of maintaining its perfected status with regard to this collateral. FmHA timely filed its continuation statement to prevent the lapsing of its perfected interest in the farm machinery and equipment.

On March 29, 1990, debtors filed a petition for relief under chapter 7 of the Bankruptcy Code. After filing for bankruptcy protection, debtors discussed with FmHA the treatment of its claim. The discussions were based on the premise that FmHA's lien on the farm machinery and equipment was junior to the lien of the bank.[2]

Thereafter, on June 6, 1990, debtors and their counsel executed a reaffirmation agreement binding debtors to repay the sum of $60,532.69 to the bank notwithstanding their discharge in bankruptcy. On June 8, 1990, debtors' counsel wrote to FmHA concerning debtors' desire to reaffirm their obligation to FmHA for the secured value of FmHA's collateral which debtors thought to be approximately $30,000.00 due to the bank's first lien on the collateral.[3] By letter of June 14, 1990, FmHA rejected debtors' offer to reaffirm the obligation owed FmHA for less than its full amount but suggested that post-reaffirmation restructuring of the debt by "writedown or ... buyout at net recovery value" might be possible.

Debtors never reaffirmed their obligation to FmHA. However, on August 27, 1990, debtors attended a hearing on the agreement reaffirming their obligation to the bank. An order of discharge releasing debtors from all dischargeable debts was entered on September 27, 1990, without debtors having rescinded the agreement reaffirming their debt to the bank.

Subsequently, FmHA wrote two letters to the debtors to ascertain debtors' plans for paying FmHA the value of its secured interest in the collateral. In both letters, FmHA made references to the bank's lien

---

**1.** Section 9–402(1) of the Illinois Uniform Commercial Code (hereafter "UCC"), Ill.Rev.Stat. ch. 26, para. 9–402(1), provides, in pertinent part, that "[a] financing statement may be filed before a security agreement is made or a security interest otherwise attaches."

**2.** Debtors make a general assertion in their affidavit that they relied on communications from FmHA in deciding to reaffirm the obligation owed the bank and in foregoing rescission of the reaffirmation agreement, and FmHA has never refuted the assertion. Accordingly, the

Court assumes for purposes of this Order that debtors relied on the communication from FmHA.

**3.** According to notes written by FmHA's agent on November 29, 1990, debtors owed FmHA approximately $101,000.00 in mid–1990. According to FmHA's letter to debtors dated December 10, 1990, the collateral was appraised at $90,700.00 and debtors owed the bank $60,532.69 as of April 18, 1990.

as the senior lien on the collateral.[4]

Nearly a year later, the bank filed an amended complaint in three counts against debtors and FmHA in the United States District Court for the Southern District of Illinois.[5] In the first count of the amended complaint, the bank sought a sale of the farm machinery and equipment with remittance of the proceeds to the bank. A second count sought judgment against debtors in the amount of $61,142.46 plus interest, costs and attorneys' fees. The third count requested a judicial determination of the superiority of the bank's lien to the lien of FmHA. On November 21, 1991, FmHA filed an answer to the amended complaint and a counterclaim asserting the superiority of its lien and its paramount right to the sale proceeds based on the bank's ineffective continuation statement.

With the bankruptcy case still pending, the District Court referred the matter to the Bankruptcy Court to be heard in conjunction with an adversary proceeding filed by the trustee addressing the same issues.[6] At trial, the parties stipulated that no facts were in dispute and that the case could be decided without the presentation of additional evidence. The parties have treated the proceeding exclusively as an action to determine the priority of liens and all argument has been directed to that purpose. No evidence or argument has been presented as to Counts I and II of the amended complaint. Accordingly, Counts I and II are dismissed based on plaintiff's failure to sustain its burden of proof.[7]

█ The first issue the Court must decide is whether the filing of a continuation statement four days prior to the six month statutory "window" for filing is effective to prevent lapse of the financing statement. If the answer to this question is in the affirmative, the Court need look no further.

The statutory scheme for filing and maintaining the effectiveness of a financing statement is set forth in Article 9 of the Illinois UCC. Ill.Rev.Stat. ch. 26, para. 9–101 *et seq.* Paragraph 9–403(2) of the UCC provides in pertinent part that:

> a filed financing statement is effective for a period of 5 years from the date of filing. The effectiveness of a filed financing statement lapses on the expiration of the 5 year period unless a continuation statement is filed prior to the lapse.

Ill.Rev.Stat. ch. 26, para. 9–403(2). Paragraph 9–403(3) of the UCC then instructs secured parties on the requirements of an effective continuation statement. It states in pertinent part:

> A continuation statement may be filed by the secured party **within 6 months prior** to the expiration of the 5 year period specified in subsection (2).... **Upon timely filing** of the continuation statement, the effectiveness of the original statement is continued for 5 years after the last date to which the filing was effective....

Ill.Rev.Stat. ch. 26, para. 9–403(3) (emphasis added). Here, the bank's financing statement filed on July 13, 1984, expired on July 12, 1989, unless the filing of the continuation statement on January 9, 1989, was effective to prevent the lapse.

**4.** FmHA's agent also met with Mrs. Isringhausen in person on November 29, 1990. FmHA's agent's notes commemorating this discussion suggest that the discussion was premised on the belief that FmHA's lien was subordinate to the lien of the bank.

**5.** The bank originally filed, on September 4, 1991, a two count complaint against debtors and FmHA in the Circuit Court for the Seventh Judicial Circuit in Jersey County, Illinois seeking the identical relief as sought in Counts I and II of the amended complaint. FmHA removed the cause of action to the United States District Court for this district.

**6.** That adversary case, adv. no. 92–5024, has since been dismissed.

**7.** As a result of the posture of the case, debtors, although named defendants in the amended complaint, find themselves in the position of arguing in tandem with plaintiff bank with respect to Count III of the amended complaint and with respect to FmHA's counterclaim against the bank. Accordingly, pursuant to Rules 13(h), 19(a) and 21 of the Federal Rules of Civil Procedure, made applicable to this case by Bankruptcy Rules 7013, 7019 and 7021, respectively, debtors are realigned as plaintiffs as to Count III of the amended complaint and as defendants to the counterclaim.

The Court has previously considered the validity of a prematurely filed continuation statement. In *In re Comer*, No. BK 87-30273 (Bankr.S.D.Ill. Nov. 30, 1987), the Court held that a continuation statement, to be effective, must be filed within the six month "window" preceding the expiration of the original financing statement. The Court's decision in *Comer* is consistent with the decisions of the overwhelming majority of other courts which, in examining the issue, have refused to deviate from the clear and mandatory [8] language of the statute. See *In re Rainbow Mfg. Co.*, 129 B.R. 702, 705 (Bankr.M.D.Ga.1991); *In re Adam*, 96 B.R. 249, 252–53 (Bankr.D.N.D. 1989); *Matter of Hubka*, 64 B.R. at 475–76; *In re Hays*, 47 B.R. 546, 550 (Bankr. N.D.Ohio 1985); *In re Vermont Fiberglass, Inc.*, 44 B.R. at 509; *Banque Worms v. Davis Constr. Co., Inc.*, 831 S.W.2d at 923–24; *Lorain Music Co. v. Allied Inv. Credit Corp.*, 535 N.E.2d at 346–47.

Were the Court to adopt the position that debtors and the bank advocate, a creditor would be forced to search the records not only for the prescribed six-month period but also for the four and one-half years prior to that period. "This would place a burden on a record searcher that is not required by the statute." *In re Rainbow Mfg. Co.*, 129 B.R. at 705. Although it is unfortunate that the bank and debtors may suffer as a result of an error of a mere four days while FmHA reaps a windfall, other considerations take precedence here. The bank is not a novice in matters of commercial law, and the Court finds that the need to avoid disharmonious interpretations of a uniform law "enacted to establish standard business laws throughout the United States," *id.* at 704, surpasses any requirement urged by debtors and the bank that the UCC be liberally construed.

The sole authority discovered by the Court or by any of the parties which departs from strict statutory construction is *In re Callahan Motors, Inc.*, 538 F.2d 76 (3rd Cir.), *cert. denied*, 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976). However, the bank's and debtors' reliance on *Callahan* is misplaced. In *Callahan*, the New Jersey Secretary of State's office sent a form letter to parties with financing statements on file containing language which the Court of Appeals found to have inadvertently induced the premature filing of the continuation statement in question. The Third Circuit was careful to limit its ruling to the unusual circumstances of the case before it. The Court expressly stated that it was not ruling on the question of whether a continuation statement is timely when filed more than six months before the expiration of the financing statement to which it is directed. *Id.* at 80.

In the case at hand, there are no special facts which either induced or would justify the bank's premature filing. Nor is there support in any of the cases for the bank's and the debtors' argument that the filing officer's ministerial act of accepting the premature continuation statement for filing represents a determination of its validity or effectiveness upon which the bank and debtors are entitled to rely. *See id.* (declining to decide whether a continuation statement should always be deemed timely if accepted by the filing officer). Accordingly, the bank's premature continuation statement failed to comply with the statutory requirements and was ineffective to continue the bank's original financing statement beyond July 12, 1989.

Having determined this issue against the bank and debtors, the Court must now evaluate whether the various equitable doctrines asserted by the bank and debtors alter the outcome. The bank and debtors

8. It is well settled that the word "may" in the statutory phrase, "[a] continuation statement may be filed ... within 6 months prior to the expiration of the 5 year period ...," Ill.Rev.Stat. ch. 26, para. 9–403(3), "refers to whether or not a continuation statement is, in fact, filed.... [and] has no reference to the prescribed six-month period in which to file." *In re Callahan Motors, Inc.*, 396 F.Supp. 785, 789 (D.N.J.1975), *rev'd on other grounds*, 538 F.2d 76 (3rd Cir.), *cert. denied*, 429 U.S. 987, 97 S.Ct. 507, 50 L.Ed.2d 598 (1976). See also *Matter of Hubka*, 64 B.R. 473, 476 (Bankr.D.Neb.1986); *In re Vermont Fiberglass, Inc.*, 44 B.R. 505, 509 (Bankr. D.Vt.1984); *Banque Worms v. Davis Constr. Co., Inc.*, 831 S.W.2d 921, 924 (Ky.Ct.App.1992); *Lorain Music Co. v. Allied Inv. Credit Corp.*, 41 Ohio App.3d 235, 535 N.E.2d 345, 347 (1987).

first argue that FmHA is estopped from asserting a lien superior to the bank's because of prior representations made by FmHA as to its junior lien position.

■ The doctrine of equitable estoppel precludes one party from asserting a claim or defense against another party who has detrimentally relied on the former's misrepresentation or failure to disclose a material fact. *Kennedy v. United States*, 965 F.2d 413, 417 (7th Cir.1992) (citing *Portmann v. United States*, 674 F.2d 1155, 1158 (7th Cir.1982)). The traditional elements of the doctrine are: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on that misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Id.* (citing *In re Larson*, 862 F.2d 112, 115 (7th Cir.1988) (quoting *United States v. Asmar*, 827 F.2d 907, 912 (3rd Cir.1987))). The burden of proof is on the party claiming estoppel. *Id.*

■ It is clear that the bank and debtors have failed to meet their burden with respect to the first element. In order for the doctrine to apply, there must be a misrepresentation of fact. Not only must "the party to be estopped ... know the facts.... and intend that his conduct ... be acted upon," *Azar v. United States Postal Service*, 777 F.2d 1265, 1268 (7th Cir.1985) (citing *Portmann v. United States*, 674 F.2d at 1167), but one cannot be estopped by "the mere expression of an erroneous opinion on a matter of law...." 28 Am.Jur.2d *Estoppel and Waiver* § 47 at 656 (1966). Here, FmHA admits that it erred in its original conclusion that the bank held a first lien and that this error was communicated to debtors. However, there is no evidence before the court showing that FmHA knew at the time of its communications that the bank's continuation statement was prematurely filed. Moreover, it is clear that the communications concerned FmHA's legal conclusion as to its lien status and the priority of the

bank's lien rather than misstatements of fact.

■ The logical consequence of refusing to predicate estoppel on an erroneous legal conclusion is that a party claiming equitable estoppel cannot be said to have reasonably relied on a misrepresentation as to a matter of law.[9] For there to be reasonable reliance, it must appear that the party claiming estoppel was not only ignorant of the facts, *Azar v. United States Postal Service*, 777 F.2d at 1268 (citing *Portmann v. United States*, 674 F.2d at 1167), but also "acted reasonably when he relied on those he now seeks to estop rather than employing some other means to obtain the information." *Id.* at 1270. "It is fundamental that a person cannot predicate an estoppel in his favor on his own dereliction, omission, or inadvertence where there is no concealment, misrepresentation, or other inequitable conduct by the other party.... So too, where acts alleged as the basis for an estoppel were also committed by the party attempting to assert it, there can be no estoppel." 28 Am.Jur.2d *Estoppel and Waiver* § 35 at 642 (1966) (citing *In re Peer Manor Bldg. Corp.*, 134 F.2d 839, 842 (7th Cir.), *cert. denied*, 320 U.S. 211, 63 S.Ct. 1447, 87 L.Ed. 1849 (1943)).

No party has presented evidence to show whether or not the bank and debtors were aware that the continuation statement was prematurely filed when they entered into the reaffirmation agreement. Assuming *arguendo* that they were ignorant of this fact, the bank and debtors nonetheless may not, as a result of FmHA's erroneous legal conclusion, divest themselves of the responsibility of making an independent investigation of the status of the liens before binding themselves in a reaffirmation of the debt. *See, e.g., Azar v. United States Postal Service*, 777 F.2d at 1270; *Woodstock/Kenosha Health Center v. Schweiker*, 713 F.2d 285, 290 (7th Cir.1983) (con-

---

9. Of course, there must be reliance in the first instance. Here, there is no evidence before the Court showing that the bank knew of FmHA's erroneous communication to debtors when it decided to allow debtors to reaffirm their debt.

Thus, the bank has failed to prove that it relied on FmHA's communications regarding its lien status. However, the court will assume actual reliance by the bank for the purpose of determining whether such reliance was reasonable.

structive knowledge of the facts defeats the reasonableness of the reliance). Here, debtors were represented by able counsel from the inception, and the bank was operating in its area of expertise. *See Woodstock/Kenosha Health Center v. Schweiker*, 713 F.2d at 291. Given that the documents supporting lien status were a matter of record and readily available, and that the ineffectiveness of premature filing is virtually axiomatic, it was unreasonable for debtors and the bank to rely on FmHA's conclusion without first satisfying themselves of its accuracy.

The bank and debtors may not hold FmHA to a higher standard of conduct than that to which they hold themselves. *See, e.g., In re Peer Manor Bldg. Corp.*, 134 F.2d at 842. FmHA did nothing that the bank and debtors did not do, and failed to do only that which the bank and debtors failed to do. *See id.* Equitable principles do not allow the court to shift the responsibility for determining the status of the bank's lien onto FmHA and off those who failed adequately to protect themselves.

*Portmann v. United States*, 674 F.2d 1155 (7th Cir.1982), does not convince the Court otherwise. In *Portmann*, the Court of Appeals reversed the District Court's grant of summary judgment in favor of the United States Postal Service and remanded the case to the District Court on the basis that the doctrine of equitable estoppel might be available against the Postal Service upon proof by plaintiff of her allegations that she had been misadvised by a postal clerk as to insurance coverage for her lost packages. Although the bank argues that *Portmann* prohibits FmHA from "belatedly challenging the validity of a lien which [it] affirmatively stated in writing was valid," the case was not decided on the merits and the Court of Appeals left it to the District Court to determine whether the elements of equitable estoppel were met. *Portmann* stands only for the principle that the Postal Service, albeit a branch of the federal government, does not have absolute immunity from estoppel.[10]

As to suffering a detriment, the third element required under the equitable estoppel doctrine, only debtors, and not the bank, have been harmed. The execution of the reaffirmation agreement did not have any effect on the priority of the bank's lien. The harm occurred well before the execution of the reaffirmation agreement and was caused by the bank's own failure to file an effective continuation statement. While debtors admittedly are in a worse position for having reaffirmed what appears to be an unsecured debt, the bank has not suffered from FmHA's error, and, in fact, has improved its position as a result. If FmHA had insisted from the beginning that it had the senior lien, the bank would now find itself not only unsecured but also sans reaffirmation agreement. Additionally, the bank's argument that its recovery as a junior lien holder has been diminished by FmHA's delay in assuming senior lien status is purely speculative. The Court has before it no evidence either that the collateral has decreased in value or that the bank would have increased its recovery had it been treated as the junior lien holder from the inception.

■ Next, the bank and debtors argue that the doctrine of laches bars FmHA from asserting a lien superior to that of the bank. Like equitable estoppel, laches is an equitable doctrine. "It is concerned principally with the fairness of permitting a claim to be enforced. 'It is unlike [a statute of] limitation[s], which is based merely on time. Rather, laches is based upon changes of conditions or relationships involved with the claim.'" *Zelazny v. Lyng*, 853 F.2d 540, 541 (7th Cir.1988) (quoting *Lingenfelter v. Keystone Consol. Indus., Inc.*, 691 F.2d 339, 340 (7th Cir.1982) (per curiam)). The two elements the party asserting laches must prove are well-established: "'(1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting the defense.'" *Farries v. Stanadyne/Chicago*

---

10. Having found on the merits that the doctrine of equitable estoppel does not defeat FmHA's first lien on the collateral, the Court need not address FmHA's argument that the doctrine may not be asserted against the government.

*Div.*, 832 F.2d 374, 378–79 (7th Cir.1987) (quoting *Costello v. United States*, 365 U.S. 265, 282, 81 S.Ct. 534, 543, 5 L.Ed.2d 551 (1961)). Unlike estoppel, "[l]aches requires no reliance. It bars recovery where 'deferment of action to enforce claimed rights is prolonged and inexcusable and operates to [the non-delaying party's] material prejudice.'" *Citation Cycle Co., Inc. v. Yorke*, 693 F.2d 691, 695 (7th Cir.1982) (quoting *Boris v. Hamilton Mfg. Co.*, 253 F.2d 526, 529 (7th Cir.1958)).

 In examining whether FmHA's claim of senior lien is barred by laches, the Court notes first that the arguably prejudicial delay in this case was only six months, representing the period between the date that debtors sought bankruptcy relief and the date of their discharge when the reaffirmation agreement became irrevocable. The bank and debtors appear to contend that FmHA had an affirmative duty to ascertain and assert its lien status during this time in order to safeguard debtors from the unfortunate situation in which they now find themselves. However, a creditor in a bankruptcy case is not required to investigate its lien status for the protection and convenience of debtors contemplating reaffirmation decisions. Nor was FmHA required to file a proof of claim in this case [11] or to bring an adversary proceeding to establish the validity, priority or extent of the respective liens. In fact, there is no evidence whatsoever before the court that FmHA was aware either of the premature continuation statement or of debtors' decision to reaffirm their debt to the bank in sufficient time to affect that decision.

The Court finds neither prolonged nor inexcusable delay on the part of FmHA. Here, the bank, with reason to know of the premature filing and greater access to the documents at issue, and the debtors, with more at stake in the reaffirmation decision, also failed to investigate and resolve the lien priorities before the reaffirmation agreement became irrevocable. Clearly,

FmHA's mistaken conclusion as to the legal status of its lien, which it held for some period of time, is no more an indication of a lack of diligence on its part than are the bank's and the debtors' own mistakes in mischaracterizing the liens and failing to seek judicial determination for an extended period of time.[12]

 Finally, the bank and debtors contend that the doctrine of collateral estoppel precludes FmHA from asserting the seniority of its lien. According to this argument, since the reaffirmation agreement was approved by the Court and found to be in debtors' best interest at a reaffirmation hearing conducted on August 27, 1990, FmHA is collaterally estopped from challenging this finding which must have been based on a finding that the bank's lien was senior to the lien of FmHA. To prevail on this argument, the bank and debtors must convince the Court that the elements of collateral estoppel are satisfied.

"'Collateral estoppel, which is also known as issue preclusion, generally prevents a party from relitigating an issue the party has already litigated and lost.'" *Gilldorn Sav. Ass'n v. Commerce Sav. Ass'n*, 804 F.2d 390, 392 (7th Cir.1986) (quoting *Ferrell v. Pierce*, 785 F.2d 1372, 1384 (7th Cir.1986)). "'In general, collateral estoppel precludes relitigation of issues in a subsequent proceeding when: (1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical.'" *Id.* (quoting *Kunzelman v. Thompson*, 799 F.2d 1172, 1176 (7th Cir.1986)). "The policy underlying the doctrine is that 'one fair opportunity to litigate an issue is enough.'" *Id.* at 392–93 (quoting *Bowen v. United States*, 570 F.2d 1311, 1322 (7th Cir.1978)). "The party asserting estoppel has the burden of establishing which issues were actually determined in his favor in the prior action." *Id.* at 393.

---

**11.** As of this date, the trustee has not called for creditors to file proofs of claim.

**12.** Since the Court has found that the doctrine of laches does not preclude FmHA from asserting senior lien status, it need not determine whether the doctrine may be asserted against the government.

None of the elements of collateral estoppel are satisfied here. Nothing in the record indicates that FmHA was privy to debtors' decision to reaffirm their indebtedness to the bank or a party in any sense of the word to the reaffirmation hearing. Moreover, a determination by the Court that the bank held the senior lien was not necessary to the conclusion that the reaffirmation agreement was in debtors' best interests and, in fact, was not determined. Clearly, debtors enter into reaffirmation agreements with creditors, some of whom even are unsecured, based on a range of factors, including the availability of future credit. When debtors, with the guidance of counsel who is presumed to investigate lien status, decide that their best interest is furthered by reaffirming a particular debt, the Court does not and need not inquire into the validity, priority or extent of any lien before approving the reaffirmation agreement. To hold otherwise would put a needless burden on already scarce judicial resources. As a result, the Court's approval of the reaffirmation agreement did not encompass the issue before the Court today and does not preclude a determination that FmHA holds the senior lien.

Order and Judgment entered this date.